UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NM HOMES ONE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A. and<br>TODD BROWN,<br><br>Defendants. | 08 Civ. 7679 (SWK)<br><br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'<br>
<u>MOTION TO DISMISS</u>**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019
212-373-3000 (Phone)
212-757-3990 (Fax)

*Attorneys for defendants JP Morgan Chase
Bank, N.A. and Todd Brown*

# TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................... 1

Statement of Relevant Facts .......................................................................... 3

Argument ....................................................................................................... 5

I.  PLAINTIFF'S NON-FRAUD-BASED TORT CLAIMS  SHOULD BE
    DISMISSED ........................................................................................... 5

    A.  Plaintiff's Non-Fraud-Based Tort Claims Are Preempted by New
        York State's Martin Act.............................................................. 5

    B.  Plaintiff's Negligence-Based Claims Are Barred by the Limit on
        Liability in the Contract Between the Parties ............................. 9

    C.  Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed
        as Duplicative of its Breach of Contract Claim ....................... 10

II. PLAINTIFF'S FRAUD-BASED CLAIMS FAIL TO SUFFICIENTLY
    ALLEGE SCIENTER............................................................................ 11

    A.  Plaintiff Fails To Sufficiently Allege Facts Constituting Strong
        Circumstantial Evidence of Conscious Misbehavior or
        Recklessness .............................................................................. 13

        1.  Plaintiff fails adequately to allege that defendants knew or
            reasonably believed that the purchased securities were
            unsuitable............................................................................ 13

        2.  Plaintiff fails adequately to allege that defendants
            possessed an intent to misrepresent the liquidity and
            maturity dates of securities in the account............................ 16

    B.  Plaintiff Fails To Sufficiently Allege Facts Showing that
        Defendants Had Both Motive and Opportunity To Commit the
        Alleged Fraud ............................................................................ 18

    CONCLUSION.................................................................................... 21

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Pub. Co.*,
    No. 07 Civ. 756(PKC)(RLE), 2008 WL 4185736 (S.D.N.Y. Sept. 5, 2008) ........................ 11

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ................................................................................................... 12

*Berk* v. *Moore, Clayton & Co.*,
    No. 06 Civ. 2716(LLS), 2006 WL 3616961 (S.D.N.Y. Dec. 11, 2006) ................................... 7

*Breakwaters Townhomes Ass'n of Buffalo, Inc.* v. *Breakwaters of Buffalo, Inc.*,
    616 N.Y.S.2d 829 (4th Dep't 1994) ...................................................................................... 7

*Brown* v. *E.F. Hutton Group, Inc.*,
    991 F.2d 1020 (2d Cir. 1993) .............................................................................................. 13

*Caboara* v. *Babylon Cove Dev., LLC*,
    2008 N.Y. Slip Op. 06281 (2d Dep't 2008) .......................................................................... 7

*Castellano* v. *Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001) ......................................................................................... 6, 7, 8

*Champion Home Builders Co.* v. *ADT Sec. Servs, Inc.*,
    179 F. Supp. 2d 16 (N.D.N.Y. 2001) ................................................................................... 9

*Chill* v. *General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996) ............................................................................................... 13

*CPC Int'l Inc.* v. *McKesson Corp.*,
    70 N.Y.2d 268 (1987) ...................................................................................................... 6, 7

*Cromer Fin. Ltd.* v. *Berger*,
    No. 00 CIV 2498(DLC), 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) ................................ 8

*Eagle Tenants Corp.* v. *Fishbein*,
    582 N.Y.S.2d 218 (2d Dep't 1992) ...................................................................................... 7

*Edison Fund* v. *Cogent Inv. Strategies Fund, LTD.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008) ............................................................................ 12, 19

*Eickhorst* v. *E.F. Hutton Group, Inc.*,
    763 F. Supp. 1196 (S.D.N.Y. 1990) .................................................................................... 15

*Ernst & Ernst* v. *Hochfelder,*
    425 U.S. 185 (1976)................................................................................16

*Fezzani* v. *Bear, Stearns & Co, Inc.,*
    No. 99 Civ. 0793(PAC), 2008 WL 4369719 (S.D.N.Y. Sept. 23, 2008) ...........................12

*Franks* v. *Cavanaugh,*
    711 F. Supp. 1186 (S.D.N.Y. 1989) ...........................................................18

*Grandon* v. *Merrill Lynch & Co.,*
    No. 95 Civ. 10742(SWK), 2001 WL 826092 (S.D.N.Y. July 20, 2001)...........................18

*Granite Partners, L.P.* v. *Bear, Stearns & Co.,*
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) .............................................................8

*Horn* v. *440 E. 57th Co.,*
    547 N.Y.S.2d 1 (1st Dep't 1989).................................................................7

*In re Bayou Hedge Fund Lit.,*
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) .......................................................13, 15

*In re JP Morgan Chase Sec. Litig.,*
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ..........................................................19

*In re Merrill Lynch & Co., Inc.,*
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ...........................................................3

*In re Take-Two Interactive Sec. Lit.,*
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) .......................................................12, 13

*Indep. Order of Foresters* v. *Donaldson, Lufkin & Jenrette, Inc.,*
    919 F. Supp. 149 (S.D.N.Y. 1996) ..............................................................8

*Kalnit* v. *Eichler,*
    264 F.3d 131 (2d Cir. 2001) ...................................................................12

*Keenan* v. *D.H. Blair & Co., Inc.,*
    838 F. Supp. 82 (S.D.N.Y. 1993) ..............................................................15

*Lentell* v. *Merrill Lych & Co.,*
    396 F.3d 161 (2d Cir. 2005) ....................................................................3

*Louros* v. *Kreicas,*
    367 F. Supp. 2d 572 (S.D.N.Y. 2005) ..........................................................13

*Marcus* v. *Frome,*
    329 F. Supp. 2d 464 (S.D.N.Y. 2004) ...........................................................8

*Metropolitan Life Ins. Co.* v. *Noble Lowndes Intern., Inc.*,
  84 N.Y.2d 430 (1994) ...........................................................................................9, 10

*Mfrs. Life Ins. Co.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*,
  No. 99 Civ. 1944(NRB), 2000 WL 709006 (S.D.N.Y. June 1, 2000)......................................8

*Nairobi Holdings, Ltd.* v. *Brown Bros. Harriman & Co.*,
  No. 02 CIV. 1230(LMM), 2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002) ......................8, 20

*Nanopierce Techs., Inc.* v. *Southridge Capital Mgmt.*,
  No. 02 Civ. 0767(LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003)............................7, 8

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d. Cir 2000) .............................................................................12, 16

*Obremski* v. *Image Bank, Inc.*,
  816 N.Y.S.2d 448 (1st Dep't 2006) .............................................................................9

*Olkey* v. *Hyperion 1999 Term Trust, Inc.*,
  98 F.3d 2 (2d Cir. 1996) .............................................................................................16

*Pro Bono Investments* v. *Gerry*,
  No. 03 Civ. 4347(JGK), 2005 WL 2429787 (Sept. 30, 2005)..........................................8

*Rego Park Gardens Owners, Inc.* v. *Rego Park Gardens Assocs.*,
  595 N.Y.S.2d 492 (2d Dep't 1993)................................................................................7

*Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*,
  No. 07 Civ. 376(JMB), 2008 WL 2275902 (S.D.N.Y. 2008) ..........................................10

*S.E.C.* v. *First Jersey Secs., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ................................................................................1, 12

*Scalp & Blade, Inc.* v. *Advest, Inc.*,
  2001 NY Slip Op. 02379 (4th Dep't 2001) ....................................................................8

*Sedona Corp.* v. *Ladenburg Thalmann & Co.*,
  No. 03 Civ. 3120(LTS), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ..............................7, 8

*Shields* v. *Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ................................................................................15, 16

*Sommer* v. *Federal Signal Corp.*,
  79 N.Y.2d 540 (1992)................................................................................................9

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007)................................................................................2, 12, 15, 18

*Travelers Indem. Co. of Conn.* v. *Losco Group, Inc.*,
  136 F. Supp. 2d 253 (S.D.N.Y. 2001) .................................................................. 9

*Uribe* v. *Merchants Bank of N.Y.*,
  91 N.Y.2d 336 (1998) ............................................................................................. 20

*Whitehall Tenants Corp.* v. *Estate of Olnick*,
  623 N.Y.S.2d 585 (1st Dep't 1995) ....................................................................... 7

*Zucker* v. *Sasaki*,
  963 F. Supp. 301 (S.D.N.Y. 1997) ........................................................................ 18


STATUTES

N.Y. Gen. Bus. Law Art. 23-A (2006) ...................................................................... 5, 6

Securities Exchange Act § 10(b), 15 U.S.C. 78j(b) (2006) .................................... 12, 13


OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .................................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 3

SEC Rule 10b-5, 17 CFR § 240.10b-5 ....................................................................... 11, 12

Defendants JP Morgan Chase Bank, N.A. and Todd Brown respectfully submit this memorandum of law in support of their motion to dismiss the Second through Tenth Counts of plaintiff's complaint, dated September 2, 2008, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## **Preliminary Statement**

With 20/20 hindsight, plaintiff claims that defendants should not have invested, on its behalf, in securities that have declined in value due to the subprime mortgage crisis. The crux of the complaint is that defendants invested in inappropriate and unsuitable securities collateralized with subprime and other mortgage securities, as well as in debt securities issued by public companies that themselves had economic exposure to the declines in the nation's housing markets.

This motion to dismiss is based on the following straightforward grounds.

*First*, plaintiff's non-fraud, common law tort claims – breach of fiduciary duty (Second Count), negligent misrepresentations and omissions (Eighth Count), negligence (Ninth Count), and gross negligence (Tenth Count) – are preempted by New York's Martin Act, which grants the New York Attorney General sweeping authority to investigate and prosecute securities claims in this State. The Second Circuit and the vast majority of judges in this District have held that the Martin Act preempts – and precludes the assertion of – non-fraud, common law tort claims based on conduct covered by its provisions. All such claims here should be dismissed as a matter of law. (*See infra* at 5-9.)

---

[1]    Simultaneous with the filing of this motion, defendants are submitting their answer to the complaint's one remaining claim, breach of contract (First Count).

In addition, plaintiff's claims of negligent misrepresentation and negligence are barred by the limit on liability in the contract between the parties, and plaintiff's claim of breach of fiduciary duty should be dismissed as duplicative of its breach of contract claim. (*See infra* at 9-11.)

*Second*, plaintiff's fraud-based claims – for violations of the federal securities laws (Third, Fourth, Fifth, and Sixth Counts) and for fraudulent misrepresentations and omissions (Seventh Count) – fail to plead scienter with the specificity required by the Private Securities Litigation Reform Act (as to the federal claims) and Rule 9(b) of the Federal Rules of Civil Procedure (as to the state claims). Plaintiff alleges no facts that suggest a motive for defendants to have made misrepresentations or unsuitable investments, nor does plaintiff allege sufficient circumstantial evidence of recklessness. Plaintiff has not pleaded facts giving rise to "a strong inference of scienter" that is "as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509-10 (2007).

Especially in light of the key underlying documents incorporated by reference in the complaint, the far more plausible and compelling inference to be drawn here is that defendants made investment choices that were expressly authorized and suitable for plaintiff's investment objective, but which have since declined in value by virtue of market forces that have adversely affected *all* investors. The documents also reflect that defendants, far from concealing or misrepresenting the nature of the investments made, disclosed all relevant information relating to the investments in the

account's statements and reviews.    Such conduct is entirely inconsistent with any fraudulent intent.  (*See infra* at 11-20.)

Accordingly, defendants respectfully request that the Court dismiss the Second through Tenth Counts of the complaint, with prejudice.   Defendants further request that, if such counts are dismissed and because the lone remaining count (the First Count, breach of contract) is not being asserted against him, Todd Brown be dismissed from this action, with prejudice.

### Statement of Relevant Facts

The facts below are derived from the complaint and from documents that are referred to and incorporated by reference in the complaint.[2]  These documents are inconsistent with plaintiff's conclusory allegations of scienter.   The documents describe each type of security that defendants were authorized to purchase for the account, as well as other characteristics of the investments.   The documents also reflect that, as purchases were made, defendants disclosed to plaintiff all such information.

In a letter to Michael Murr – the Co-Chairman of NM Homes' Board of Directors (Compl. ¶ 26) and majority owner of NM Homes – dated October 24, 2006, defendant Todd Brown describes, among other things, the Enhanced Cash strategy, the

---

[2]    Copies of all documents cited in this memorandum are submitted herewith as exhibits to the Declaration of Richard A. Rosen, dated November 7, 2008 (the "Rosen Declaration" or "Rosen Decl.").   The Court may consider all of these documents on this motion without converting it into a motion for summary judgment.  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (Pollack, J.) ("In deciding a Rule 12(b)(6) motion, the Court may consider the following materials:  (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint. . . ."), *aff'd sub nom. Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

investment strategy that Murr selected for the account.[3]  (Rosen Decl. Ex. A, at 3; *see also* Compl. ¶ 28.)

Three of the "[t]ypical investments" listed for the strategy – ABSs (asset-backed securities), Corporates (which include floating rate notes), and CMBSs (collateralized mortgage-backed securities) – are the same categories of securities that the complaint now alleges were "inappropriate and unsuitable" for the account.[4]  Similarly, the Investment Guidelines, which were attached to the executed Discretionary Portfolio Mandate, expressly list as potential investments for the account, "Asset-backed securities," "Collateralized Mortgage Obligations," and "Corporate securities," which include corporate floating-rate notes.[5]  Lastly, the "Investment Management Account

---

[3]   The relevant portion of the October 24 Letter reads:

> **Enhanced Cash**
> Designed for assets with a time horizon of nine months or more, the taxable fixed income Enhanced Cash strategy seeks to maximize returns while providing insulation from principal loss and achieving a compelling yield advantage over money market funds.  The strategy accomplishes its principal preservation objective by investing a large component of the portfolio (typically 50% or more) in floating rate securities which provide a buffer to the portfolio by resetting at higher yields as interest rates rise.  The yield advantage portion of the objective is realized by investing the remaining funds in securities maturing modestly outside of the money market fund universe (usually between 13 and 24 months), capitalizing on the additional yield offered by a steep yield curve.  The strategy is characterized by its conservative nature as witnessed by its high credit quality and modest duration or interest rate positioning (1 year or less by guidelines).  Typical investments are USD-denominated and include CDs, Supranationals/Sovereigns, CDs Repurchase Agreements, ABS, Corporates, CMBS (non-callable real estate debt), Time Deposits, Agencies, Mortgages and Treasuries.

(Rosen Decl. Ex. A, at 3.)

[4]   (*See* Compl. ¶ 39 ("home equity loan asset backed security ('ABS-HEL')"); ¶ 40 ("collateralized mortgage obligation ('CMO')"); ¶ 42 ("floating rate notes ('FRN')").)

[5]   (*See* Rosen Decl. Ex. B, last two pages; *see also infra* at 14-15.)

Reviews" that plaintiff received list each of the securities held in the account and specifically note the security type (*e.g.*, ABS, CMO, or Corporate).[6]

Plaintiff also alleges that defendants acted with scienter in purchasing securities that were unsuitable for the account by virtue of their "long-term maturities," which allegedly were "in contravention of NMH's desire for short-term liquid securities." (Compl. ¶ 13.) These allegations, too, fail to support an inference that defendants acted with scienter, because the key underlying documents show that there were *no* liquidity requirements or maturity limitations for the account, and thus nothing for defendants to have a motive to conceal.[7]

## Argument

### I.

### PLAINTIFF'S NON-FRAUD-BASED TORT CLAIMS SHOULD BE DISMISSED

Plaintiff's state law tort claims, with the exception of fraud, are preempted by New York's Martin Act. In addition, plaintiff's negligence claims are barred by the limit on liability in the contract between the parties, and plaintiff's breach of fiduciary duty claim is barred as duplicative of its breach of contract claim.

**A.      Plaintiff's Non-Fraud-Based Tort Claims Are Preempted by New York State's Martin Act**

Plaintiff's non-fraud common law tort claims – breach of fiduciary duty (Second Count), negligent misrepresentations and omissions (Eighth Count), negligence

---

[6]      (*See, e.g.*, Rosen Decl. Exs. C-D; *see also* Compl. ¶¶ 87-88.)

[7]      For example, the Discretionary Portfolio Mandate states, "*[t]here are no specific liquidity requirements for this Discretionary Portfolio*." (*See* Rosen Decl. Ex. B, at 1; *see also infra* at 16-18; Compl. ¶ 80 (admitting that "NMH did not specify a particular, technical liquidity requirement").)

(Ninth Count), and gross negligence (Tenth Count) – are all barred by the Martin Act. *See* N.Y. Gen. Bus. Law, Art. 23-A, § 352 *et seq.*[8]   The Martin Act, New York's "blue-sky" law, equips the State with sweeping authority to investigate and prosecute securities claims in the State. *Id.*   Thus, the New York Court of Appeals has held that there is no implied private right of action under the Act. *CPC Int'l Inc.* v. *McKesson Corp.*, 70 N.Y.2d 268, 275 (1987).

The most recent decision by the Second Circuit to consider the impact of the Martin Act held that the Act preempts non-fraud state law based claims. *Castellano* v. *Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001).   In *Castellano*, a former employee-shareholder brought an action against a closely-held corporation alleging, among other claims, breach of fiduciary duty for its alleged concealment of a leveraged recapitalization. *Id.* at 190.   Rejecting plaintiff's argument that the common law cannot be abrogated by statutory implication, the Second Circuit dismissed the breach of fiduciary duty claim and held that "principals of federalism and respect for state courts'

---

[8]   Section 352-c provides:

> Prohibited acts constituting misdemeanor felony.   1. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices: (a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale; (b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances; (c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made; where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in section three hundred fifty-two of this article, regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.

interpretation of their own laws counsel against ignoring the rulings of those New York courts that have taken up the issue." *Id.*

New York state courts have consistently held that "the Martin Act preempts any common law claims within its purview," reasoning that "allowing private litigants to press common law claims covered by the Martin Act would upset the Attorney General's exclusive enforcement power in exactly the same way that it would upset the exclusive enforcement power to allow private claims pleaded under the Martin Act itself."[9] *See Nanopierce Techs., Inc.* v. *Southridge Capital Mgmt.*, No. 02 Civ. 0767(LBS), 2003 WL 22052894, at *2 (S.D.N.Y. Sept. 2, 2003) (Sand, J.) (collecting and discussing New York state cases); *cf. Castellano*, 257 F.3d at 190 ("[S]ustaining a cause of action for breach of fiduciary duty in the context of securities fraud would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney General's exclusive enforcement powers thereunder.").

---

[9]   *See CPC Int'l Inc.* v. *McKesson Corp.,* 70 N.Y.2d 268 (1987); *Horn* v. *440 E. 57th Co.,* 547 N.Y.S.2d 1 (1st Dep't 1989) (dismissing claims for breach of fiduciary duty and negligent misrepresentation, holding that "to sustain them would be, in effect, to recognize a private right of action under the Martin Act contrary to [*McKesson*]"); *Eagle Tenants Corp.* v. *Fishbein,* 582 N.Y.S.2d 218, 219 (2d Dep't 1992) ("To sustain that cause of action [for constructive fraud] would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney General's exclusive enforcement powers thereunder.") (citation omitted); *Rego Park Gardens Owners, Inc.* v. *Rego Park Gardens Assocs.,* 595 N.Y.S.2d 492, 494 (2d Dep't 1993) (dismissing claim for negligent misrepresentation); *Breakwaters Townhomes Ass'n of Buffalo, Inc.* v. *Breakwaters of Buffalo, Inc.,* 616 N.Y.S.2d 829, 829 (4th Dep't 1994) (finding that lower court should have dismissed claim "inasmuch as plaintiffs essentially seek recovery based on violations of the Martin Act," because "[i]t is well established that there is no implied private cause of action for violation of the antifraud provisions of that statute"); *Whitehall Tenants Corp.* v. *Estate of Olnick,* 623 N.Y.S.2d 585, 585 (1st Dep't 1995) ("[P]rivate plaintiffs will not be permitted through artful pleading to press any claim based on the sort of wrong given over to the Attorney General under the Martin Act."). *But see Caboara* v. *Babylon Cove Dev., LLC*, 2008 N.Y. Slip Op. 06281 (2d Dep't 2008) (holding that Martin Act does not preempt common-law fraud and breach of contract causes of action where complaint sufficiently pleads those claims).

Similarly, judges in this District that have examined the question have reached the same result with near unanimity.[10]  In fact, the only two decisions that have gone against the weight of authority[11] have been referred to as "solitary islands in a stream of contrary opinion." *Nanopierce Techs., Inc.*, 2003 WL 22052894, at *4 ("Both *Scalp & Blade* and *Cromer Finance* stand as solitary islands in a stream of contrary opinion, and neither persuades the Court to abandon the position adopted by the Second Circuit in *Castellano*.").[12]

---

[10]   *See Berk* v. *Moore, Clayton & Co.*, No. 06 Civ. 2716(LLS), 2006 WL 3616961, at *6 (S.D.N.Y. Dec. 11, 2006) (Stanton, J.) (involving preemption of negligence and negligent misrepresentation claims on basis of false statements and omissions about company's planned merger activity); *Sedona Corp.* v. *Ladenburg Thalmann & Co.*, No. 03 Civ. 3120(LTS), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (Swain, J.) (collecting cases and noting that "allowing a plaintiff to go forward on such a claim would effectively permit a private action under the Martin Act. . . . Indeed, the weight of authority holds that common law claims of negligent misrepresentation, negligence, and breach of fiduciary duty arising from securities fraud are preempted by the Martin Act."); *Nairobi Holdings, Ltd.* v. *Brown Bros. Harriman & Co.*, No. 02 CIV. 1230(LMM), 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002) (McKenna, J.) (dismissing claims and citing "well established" rule of preemption); *Mfrs. Life Ins. Co.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 99 Civ. 1944(NRB), 2000 WL 709006, at *5 (S.D.N.Y. June 1, 2000) (Buchwald, J.) (involving preemption of negligent misrepresentation claim); *Granite Partners, L.P.* v. *Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 292 (S.D.N.Y. 1998) (Sweet, J.) (involving preemption of negligent misrepresentation claim by investment fund specializing in mortgage-related securities investments brought against investment banks that had sold collateralized mortgage obligations to plaintiff fund); *Indep. Order of Foresters* v. *Donaldson, Lufkin & Jenrette, Inc.*, 919 F. Supp. 149, 151-54 (S.D.N.Y. 1996) (Batts, J.) (involving preemption of negligent misrepresentation claims brought against brokers based on purchases of collateralized mortgage obligations that lost money).

[11]   *Cromer Fin. Ltd.* v. *Berger*, No. 00 CIV 2498(DLC), 2001 WL 1112548, at *4 (S.D.N.Y. Sept. 19, 2001) (Cote, J.) (holding that Martin Act does not preempt state law negligence claims); *Scalp & Blade, Inc.* v. *Advest, Inc.*, 2001 NY Slip Op. 02379 (4th Dep't 2001) (holding that Martin Act does not preempt state law breach of fiduciary duty and negligent misrepresentation claims).

[12]   *See also Sedona*, 2005 WL 1902780, at *22 ("Both *Scalp and Blade*'s and *Cromer*'s determinations that the text of the Martin Act does not include support for preclusion of common law claims are insufficiently persuasive in the face of substantial contrary authority."); *Pro Bono Investments* v. *Gerry*, No. 03 Civ. 4347(JGK), 2005 WL 2429787, at *16 (Sept. 30, 2005) (Koeltl, J.) (endorsing "solitary islands" principle); *Marcus* v. *Frome*, 329 F. Supp. 2d 464, 476 n.4 (S.D.N.Y. 2004) (Koetl, J.) (same).

Accordingly, NM Homes' non-fraud tort claims (Second, Eight, Ninth, and Tenth Counts), which are all premised on defendants' management of the securities in the NM Homes account, are barred by the Martin Act.

**B.   Plaintiff's Negligence-Based Claims Are Barred by the Limit on Liability in the Contract Between the Parties**

In addition to being preempted under the Martin Act, NM Homes' claims of negligent misrepresentation (Eighth Count) and negligence (Ninth Count) should be dismissed based on the contractual term barring recovery for negligence.  The account's "General Terms for Accounts and Services," incorporated by reference in the Mandate, provide that defendants' liability is limited to direct damages incurred due to defendants' "gross neligence or willful misconduct."  (*See* Rosen Decl. Ex. E, at 4.)   Under New York law, exculpatory clauses in commercial contracts "are enforceable to limit recovery for claims based on ordinary negligence."  *Travelers Indem. Co. of Conn.* v. *Losco Group, Inc.*, 136 F. Supp. 2d 253, 256 (S.D.N.Y. 2001) (McMahon, J.).  Indeed, "[i]t is well settled that a contractual limitation on [negligence] liability is enforceable." *Obremski* v. *Image Bank, Inc.*, 816 N.Y.S.2d 448, 450 (1st Dep't 2006) (citing *Uribe* v. *Merchants Bank of N.Y.*, 91 N.Y.2d 336, 341 (1998)); *see also Champion Home Builders Co.* v. *ADT Sec. Servs, Inc.*, 179 F. Supp. 2d 16, 23-24 (N.D.N.Y. 2001) (granting motion to dismiss negligence claim based on contract clause limiting liability to gross negligence).

The New York Court of Appeals has held that limiting a defendant's liability "to injuries to plaintiff caused by intentional misrepresentations, willful acts and gross negligence does not offend public policy."  *Metropolitan Life Ins. Co.* v. *Noble Lowndes Intern., Inc.*, 84 N.Y.2d 430, 438 (1994) (finding that clause limiting liability to

"damages arising out of [defendant's] willful acts or gross negligence" barred consequential damages); *cf. Sommer* v. *Federal Signal Corp.*, 79 N.Y.2d 540, 554 (1992) (noting that courts only refuse to enforce on public policy grounds exculpatory clauses that seek to bar all liability including for gross negligence). "A limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss . . . which the courts should honor. . . . [The parties] may later regret their assumption of the risk . . . but the courts let them lie on the bed they made." *Metropolitan Life*, 84 N.Y.2d at 436. Accordingly, NM Homes may not assert negligence claims in contravention of its contract with defendants.

### C.   Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed as Duplicative of its Breach of Contract Claim

NM Homes' claim for breach of fiduciary duty (Second Count), in addition to being preempted by the Martin Act, should be dismissed as duplicative of its breach of contract claim (First Count). NM Homes fails to allege any breach of fiduciary duty that is independent of a breach of the obligations under the Mandate and the Guidelines. Rather, the complete overlap between the claims is sufficient to dismiss the claim for breach of fiduciary duty. *Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*, No. 07 Civ. 376(JMB), 2008 WL 2275902, at *3 (S.D.N.Y. 2008) (Barzilay, J.). As the Court in *Robin Bay* explained:

> Plaintiff's allegations for breach of fiduciary duty – failure to qualify potential sources of financing, failure to find alternative sources of financing . . . and failure to ensure delivery of promised funds – are identical to those that form the basis of [plaintiff's] breach of contract claim. . . . The supposed breach of fiduciary duty in this case involves a failure to perform duties that are contractual in nature, as compared to affirmative acts of betrayal or fraud that

10

> violate standards of conduct beyond those bargained for in
> the contract.

*Id.* at \*3-4 (granting motion to dismiss breach of fiduciary duty claim).

NM Homes limits its claim for breach of fiduciary duty to the assertion that defendants purchased securities that were unsuitable under the contractual terms of the Mandate and Guidelines. (Compl. ¶¶ 8-9, 50, 70, 72.) Thus, NM Homes' claim for breach of fiduciary duty entirely overlaps with its contract claim and should be dismissed. *See Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Pub. Co.*, No. 07 Civ. 756(PKC)(RLE), 2008 WL 4185736, at \*9 (S.D.N.Y. Sept. 5, 2008) (Castel, J.) (citing *Brooks* v. *Key Trust Co. Nat'l Ass'n,* 809 N.Y.S.2d 270, 272-73 (3d Dep't 2006) (upholding dismissal of claim for breach of investment advisor's fiduciary duty because allegations of failure to prudently manage discretionary portfolio "are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship")).

## II.

## PLAINTIFF'S FRAUD-BASED CLAIMS FAIL TO SUFFICIENTLY ALLEGE SCIENTER

A fundamental, and incurable, problem with plaintiff's complaint is that its conclusory allegations of scienter are simply not supported by the documents referenced and relied on in the complaint. Plaintiff alleges no facts that suggest a motive for defendants to have purchased unsuitable securities or misled plaintiff. Nor does plaintiff allege sufficient circumstantial evidence of recklessness. On the face of the documents referenced and relied upon in the complaint, the far more cogent and compelling inference here is that defendants purchased securities that were expressly authorized and suitable for the account, but which have since declined in value due to

11

market forces that have adversely affected *all* investors.  The account statements also reflect that defendants disclosed each of the investments; such disclosures are entirely inconsistent with an effort to conceal the nature of the investments being made.

The claims under Securities Exchange Act § 10(b) and SEC Rule 10b-5 (Third, Fourth, and Fifth Counts) should be dismissed because plaintiff fails to allege necessary facts: (1) constituting strong circumstantial evidence of conscious misbehavior or recklessness, or (2) showing that the defendants had both motive and opportunity to commit the alleged fraud.[13]  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *see also Kalnit* v. *Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001); *Novak* v. *Kasaks*, 216 F.3d 300, 307 (2d. Cir 2000) (noting that scienter allegations must "give rise to a strong inference of fraudulent intent").  The state law claim for fraud (Seventh Count) should be dismissed as plaintiff fails to allege scienter under Section 10(b), and the standard for pleading scienter in the common law fraud context is the same.  *See Fezzani* v. *Bear, Stearns & Co, Inc.*, No. 99 Civ. 0793(PAC), 2008 WL 4369719, at *6 (S.D.N.Y. Sept. 23, 2008) (Crotty, J.).

In determining whether the facts as pleaded give rise to a "strong" inference of fraudulent intent, courts must "consider plausible nonculpable explanations for defendant[s'] conduct, as well as inferences favoring the plaintiff."  *Tellabs*, 127 S. Ct. at 2510.  Thus, "[a] complaint will survive . . . ***only if a reasonable person would deem the inference cogent and at least as compelling as any opposing inferences*** one

---

[13]   For the reasons herein, the complaint fails to plead a viable claim for primary liability under Section 10(b) and Rule 10b-5.  Accordingly, plaintiff's claim for control person liability, under Section 20(a) (Sixth Count), should also be dismissed.  *See, e.g.*, *S.E.C.* v. *First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) ("[T]o establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person.").

could draw from the facts alleged." *Id.* (emphasis added); *see also In re Take-Two Interactive Sec. Lit.*, 551 F. Supp. 2d 247, 259-60 (S.D.N.Y. 2008) (Kram, J.).    As explained below, the present complaint fails to meet the strict standards of *Tellabs*.

### A.    Plaintiff Fails To Sufficiently Allege Facts Constituting Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

Recklessness sufficient to establish scienter involves not merely simple or even inexcusable negligence, but conduct that is "highly unreasonable and . . . represents an extreme departure from the standards of ordinary care." *Chill* v. *General Electric Co.*, 101 F.3d 263, 269 (2d Cir. 1996).  The allegations must approximate an actual intent to defraud.  *Id.*    And, where, as described below, a motive "is not apparent . . . , the strength of the circumstantial allegations must be correspondingly greater." *In re Take-Two*, 551 F. Supp. 2d at 270 (internal quotation marks and citation omitted).  "Thus, a plaintiff pleading a § 10(b) violation based on defendant's recklessness faces two stiff challenges in this Circuit:  the strength of the recklessness allegations must be greater than that of allegations of garden-variety fraud, ***and*** the inference of recklessness must be at least as compelling as any opposing inferences." *In re Bayou Hedge Fund Lit.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007) (McMahon, J.) (italics in original).  NM Homes' complaint does not meet this test.

### 1.    Plaintiff fails adequately to allege that defendants knew or reasonably believed that the purchased securities were unsuitable

Plaintiff has failed to allege facts from which a plausible or compelling inference could be drawn that defendants knew or reasonably believed that the securities were unsuitable for the account at the time of purchase.  Analytically, an unsuitability claim is a subset of the ordinary § 10(b) fraud claim. *Brown* v. *E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993).  Scienter may be inferred by finding that the

defendant knew or reasonably believed that the securities were unsuited to the investor's needs, misrepresented or failed to disclose the unsuitability of the securities, and proceeded to recommend or purchase the securities anyway.  *Id; see also Louros* v. *Kreicas*, 367 F. Supp. 2d 572, 592 (S.D.N.Y. 2005) (Kaplan, J.).

Plaintiff cannot establish an inference that defendants reasonably believed that the securities were unsuitable as the nonculpable explanation is more likely and compelling:  simply, defendants purchased securities that were suitable at the time of purchase, and that later turned out to be unprofitable.  As discussed above (*see supra* at 3-5), the Guidelines and October 24 Letter describe the "[t]ypical investments" and "typical sector ranges" for the Enhanced Cash strategy.  The Guidelines provide the following chart:

| Typical Sector Ranges | Maximum % |
|---|---|
| U.S. Treasuries | 100 |
| All Agencies & Supra-nationals | 100 |
| Net short-term investments, money market instruments and funds  (one year or less duration) | 100 |
| Corporate securities: | 50 |
| Asset-backed securities | 60 |
| Mortgage Securities: | 40 |
|    Generic mortgage-backed pass-through securities Issued by GNMA, FHLMC, FNMA | |
|    Nonagency mortgage-backed securities | |
|    Collateralized Mortgage Obligations | |
|    Commercial mortgage-backed securities | |

(Rosen Decl. Ex. B, last page.)

Plaintiff does not allege, nor can it, that the securities complained of in this suit – Asset-backed securities, Collateralized Mortgage Obligations, and Corporate Securities, such as floating rate notes – were not fully contemplated and identified in the Guidelines as suitable for the account.

Plaintiff alternatively asserts that at some point *after purchase*, defendants knew or should have known that the value of the complained of securities would decline (Compl. ¶¶ 66-67), and thus, should have sold them earlier while they were still profitable.  This is insufficient to plead a securities fraud claim, as "conclusory allegations of what [defendant] must have known or should have known . . . do not create an inference that [defendant] acted with scienter." *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).  Additionally, because this alleged knowledge of the securities' imminent decline in value arose *after* the purchase of the securities, these allegations do not support an inference that securities were unsuitable *at the time of purchase*.  *Eickhorst* v. *E.F. Hutton Group, Inc.*, 763 F. Supp. 1196, 1201 (S.D.N.Y. 1990) (Wald, J.) (requiring that investment be unsuitable from time of purchase to satisfy particularity requirements); *see also Keenan* v. *D.H. Blair & Co., Inc.*, 838 F. Supp. 82, 87 (S.D.N.Y. 1993) (Cannella, J.) (finding complaint alleging unsuitability of certain stock to be insufficiently particular where "[p]laintiffs allege no facts which indicate why the stock was unsuitable at the time of purchase").

Even assuming, *arguendo*, that defendants were negligent in failing to sell these securities at some point when they arguably should have been aware of the impact of the subprime mortgage crisis on the complained of securities, this is not enough to meet the test for "recklessness" because plaintiff does not allege this was done with "intent to cause plaintiff to lose money or assist in [a] fraud being perpetuated."  *In re Bayou*, 534 F. Supp. 2d at 417.

The inference proposed by plaintiff – that defendants were reckless in failing to predict the future losses of the complained of securities and sell them before the

rest of the market realized – is not "strong in light of other explanations." *Tellabs*, 127 S. Ct. at 2510. Rather, the opposing inference is more compelling: defendants' failure to predict the future losses of these securities places them alongside the entire financial industry.

Lastly, plaintiff's reliance on the eventual markdown of the prices of the securities as a factual basis for inferring scienter is also misplaced. *See Novak*, 216 F.3d at 309 ("Corporate officials need not be clairvoyant; . . . allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.") (citations omitted). With the benefit of hindsight, plaintiff has done no more than allege that defendant should not have invested in certain securities which underperformed. This is insufficient to state a fraud claim based on recklessness or conscious misbehavior.[14] *Shields*, 25 F. 3d at 1129 ("We have rejected the legitimacy of 'alleging fraud by hindsight.'"); *Olkey* v. *Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir. 1996) (holding that plaintiffs failed to plead scienter where they attempted to premise fraud on fact that, in hindsight, funds in which they had invested underperformed).

### 2. *Plaintiff fails adequately to allege that defendants possessed an intent to misrepresent the liquidity and maturity dates of securities in the account*

Plaintiff fails to allege facts sufficient to support a plausible or compelling inference that defendants intentionally misrepresented the "liquidity" and "maturity dates" of the securities within the account. There were no contractual limitations on the

---

[14] To the extent plaintiff attempts to rely on the complaint's allegations of negligence to establish scienter (Compl. ¶ 15), that, too, has been rejected by the Courts. *See, e.g., Ernst & Ernst* v. *Hochfelder,* 425

liquidity or maturity dates of investments within the account. Therefore, there is no cogent motive alleged for defendants to hide the liquidity or maturity dates of the investments made.

As to liquidity, the Guidelines state that the "Enhanced Cash strategy is suited for investors who do not require daily liquidity." (*See* Rosen Decl. Ex. B, second to last page). The Mandate affirms that "[t]here are *no specific liquidity requirements* for this Discretionary Portfolio."[15] (*See Id.*, at 1 (emphasis added).)

As to maturities, the Guidelines state that "[t]he *Investment Manager shall be responsible for selecting the maturities* of individual fixed-income securities within the portfolio." (*See* Rosen Decl. Ex.B, last page (emphasis added).) And, under "INVESTMENT RESTRICTIONS & INSTRUCTIONS," the Mandate makes no reference to maturities.[16] Significantly, although the same Mandate provides that "[t]he Client specifies a *duration* of approximately 1 year (Enhanced Cash)" for the "Securities

---

U.S. 185, 201 (1976) (noting that Section "10(b) was addressed to practices that involve some element of scienter and cannot be read to impose liability for negligent conduct alone").

[15]   The relevant portion of the Mandate reads:

> LIQUIDITY REQUIREMENTS
> There are no specific liquidity requirements for this Discretionary Portfolio. The Client will notify the Advisor in a timely manner of any potential or expected withdrawals in order to allow sufficient time for orderly accumulation of liquid reserves.

(Rosen Decl. Ex. B, at 1.)

[16]   Nonetheless, plaintiff's monthly account statements listed the securities within the account *in order of final maturity date*, with the final maturity date listed next to the name of each individual security. (*See, e.g.*, Rosen Decl. Exs. F-H.)

in this Discretionary Portfolio," (*id.* at 2 (emphasis added)),[17] there is no allegation that this limitation was ever exceeded.

As explained by the Supreme Court in *Tellabs*, "[t]he inquiry is inherently comparative:  How likely is it that one conclusion as compared to others, follows from the underlying facts?"  127 S. Ct. at 2510.  Here, plaintiff's misrepresentation allegations are not supported by the Mandate and the Guidelines or by the account statements it received each month.   Rather, because there were no liquidity or maturity date requirements, and the maturity dates were fully and repeatedly disclosed in the account statements, the most compelling inference is that defendants intended to – and in fact did – provide complete and accurate information to plaintiff regarding liquidity and maturity.

**B.     Plaintiff Fails To Sufficiently Allege Facts Showing that Defendants Had Both Motive and Opportunity To Commit the Alleged Fraud**

Plaintiff also fails to allege a theory of defendants' *motive* that is plausible, let alone strong.  There are no allegations that defendants were "churning" the account to generate fees,[18] or that defendants stood to gain any additional profit from

---

[17]   The relevant portion of the Guidelines reads:

> **Maturity and Duration**
> The Investment Manager shall be responsible for selecting the maturities of individual fixed-income securities within the portfolio.  Effective or modified duration of the portfolio should be between 0.10 and 1.0 year.  Duration is the price sensitivity of a bond or portfolio to movements in interest rates.  For example, if interest rates decline 1%, a portfolio with a 5 year duration would appreciate in value by 5% [f]or the portfolio's duration.

(Rosen Decl. Ex. B, last page.)

[18]   *Cf. Franks* v. *Cavanaugh*, 711 F. Supp. 1186, 1190 (S.D.N.Y. 1989) (Kram, J.) ("Churning is excessive trading in a customer's account, disproportionate to the size and character of the account, for the purpose of increasing the broker's commissions.").

buying unsuitable securities.[19]   In fact, plaintiff's allegations of motive are highly implausible, because, as the documents make clear, the more money that the account made, the more money defendants made.   Defendants generated fees based on a percentage of assets under management, which includes quarterly realized and unrealized gains. (*See, e.g.,* Rosen Decl. Ex. A, at 3.) Thus, defendants' incentive was aligned with plaintiff's – both wanted the account to perform well – and, therefore, the allegation that defendants had a motive to buy unsuitable securities fails the *Tellabs* test.  *Cf. Zucker* v. *Sasaki*, 963 F. Supp. 301, 310 n.12 (S.D.N.Y. 1997) ("In determining whether motive has been sufficiently alleged, the Court may assume that the defendant is acting in his informed economic self-interest.").

As a result, plaintiff is left with conclusory allegations of defendants' motive that courts have repeatedly deemed insufficient.

First, plaintiff points to defendants' general desire to earn management fees. (Compl. ¶ 15.)  This motive theory, however, has been flatly rejected as a basis for scienter.  *Edison Fund* v. *Cogent Inv. Strategies Fund, LTD.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) (Koeltl, J.) ("The desire to earn management fees is a motive generally possessed by hedge fund managers, and as such, does not suffice to allege a concrete and personal benefit resulting from fraud.").

Plaintiff also alleges that defendants' alleged misrepresentations were motivated by a financial interest to avoid taking write-downs on their own holdings. (Compl. ¶¶ 95, 118-121.)   Yet, plaintiff does not allege that any of these same

---

[19]   *Cf. Grandon* v. *Merrill Lynch & Co.*, No. 95 Civ. 10742(SWK), 2001 WL 826092, at *5 (S.D.N.Y. July 20, 2001) (Kram, J.) (finding sufficient allegation defendants charged excessive mark-ups on bonds in order to increase defendants revenues from transactions).

investments were actually held by JP Morgan Chase Bank, thereby requiring "write-downs on its holdings."  Regardless, such allegations have been rejected as a basis for scienter.  "The motive to maintain the appearance of corporate profitability, or of the success of an investment, will naturally involve a benefit to a corporation, but does not 'entail concrete benefits.'"  *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (Stein, J.) (quoting *Shields*, 25 F.3d at 1130 ("[A] plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold.")).

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court dismiss the Second through Tenth Counts of the complaint, with prejudice. Defendants further request that, if such counts are dismissed and because the lone remaining count (the First Count, breach of contract) is not being asserted against him, Todd Brown be dismissed from the case, with prejudice.


Dated: New York, New York
       November 7, 2008


                    PAUL, WEISS, RIFKIND, WHARTON &
                    GARRISON LLP


                    By: /s/ Richard A. Rosen
                        Richard A. Rosen (rrosen@paulweiss.com)
                        Jeh Charles Johnson (jjohnson@paulweiss.com)
                        H. Seiji Newman (hnewman@paulweiss.com)

                        1285 Avenue of the Americas
                        New York, New York  10019
                        Tel.: (212) 373-3000
                        Fax: (212) 757-3990

                        *Attorneys for defendants JP Morgan
                        Chase Bank, N.A. and Todd Brown*