UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
:
:
NM HOMES ONE, INC. :
:
          Plaintiff, : 08 CV 7679 (PAC)
:
v. : ECF CASE
:
JP MORGAN CHASE BANK, N.A. AND TODD :
BROWN, :
:
          Defendants. :
:
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR RECONSIDERATION PURSUANT TO
FED. R. CIV. P. 59(e) AND LOCAL CIV. R. 6.3**

                                                          KOBRE & KIM LLP
                                                          Michael S. Kim
                                                          Steven W. Perlstein
                                                          Carrie A. Tendler

                                                          800 Third Avenue
                                                          New York, New York 10022
                                                          Tel: +1 212 488 1200
                                                          Fax: +1 212 488 1220

                                                          *Attorneys for Plaintiff NM Homes One Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

FACTS AND PROCEDURAL HISTORY ..................................................................... 3

ARGUMENT .................................................................................................................. 4

    A.    Standard Of Review. ........................................................................................ 4

    B.    Based On The Attorney General's Position That The Martin Act Does Not Preempt Non-Fraud Tort Claims, The Court Should Grant Reconsideration And Vacate The Portion Of Its Order Dismissing The Common Law Non-Fraud Tort Claims As Preempted By The Martin Act. ................................................. 5

        1.    Reconsideration Is Warranted To Consider The Views Of The Attorney General In Recently Filed *Amicus* Submissions Regarding The Scope Of His Martin Act Enforcement Authority And The Extent To Which That Authority Is Impinged Upon By Private Litigation Of Common Law Claims. ........................................................................................................................ 5

        2.    The Court's Order Should Be Vacated To The Extent It Dismisses With Prejudice NMH's Common Law Non-Fraud Tort Claims, Given The Attorney General's Reasonable View Of His Exclusive Enforcement Powers Under The Martin Act As Neither Conflicting With Nor Preempting Private Litigation Of Such Traditional Claims Even In A Case Involving Securities Fraud ............................................................................................................... 6

CONCLUSION ............................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**

*Anglo American Ins. Co. v. Calfed, Inc.*, 940 F. Supp. 554 (S.D.N.Y. 1996) .................... 5

*Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986 (7th Cir. 1993) .................. 6

*Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management, Inc.*, No. 603755/2008 (N.Y. Sup. January 28, 2010) ................................................................. 1,7

*CMMF, LLC v. J.P. Morgan Investment Management, Inc.*, No. 601924/2009 (N.Y. Sup. December 10, 2009) ........................................................................................ 1

*Dougherty v. Teva Pharmaceuticals USA, Inc.*, No. Civ. 05-2336 (JCJ), 2007 WL 1165068 (E.D. Pa. Apr. 9, 2007) ....................................................................................... 6

*Gunther v. Abrams*, 592 N.Y.S.2d 308 (App. Div. 1st Dep't 1993) ................................. 5

*Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372 (S.D.N.Y. 2007) ...... 5

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Keystone Consol. Industries, Inc.*, 793 F.2d 810 (7th Cir. 1986) ............................... 6

*Louros v. Kreicas*, 367 F. Supp. 2d 572 (S.D.N.Y. 2005) ................................................... 4

*Matter of Trump-Equitable Fifth Ave. Co. v. Gliedman*, 62 N.Y.2d 539 (1984) ................ 5

*Rasmussen v. A.C.T. Envtl. Servs. Inc.*, 292 A.D.2d 710 (3d Dep't 2002) ......................... 7

*Scalp & Blade, Inc. v. Advest, Inc.*, 281 A.D.2d 882 (4th Dep't 2001) .............................. 7

*Zahrey v. City of New York*, No. Civ. 98-4546 (DCP), 2009 WL 1024261 (S.D.N.Y. April 15, 2009) ............................................................................................... 5

**Statutes**

New York General Law Article 23-a ...................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12 ................................................................................. 3

Federal Rule of Civil Procedure 59 ............................................................................. 1,4

Local Civil Rule 6.3 ...................................................................................................... 1,4

In accordance with Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, and based on an amicus brief filed on April 7, 2010, by the New York State Attorney General in what defendants have termed an analogous cases, Plaintiff NM Homes One, Inc. ("NMH"), by and through its attorneys Kobre & Kim, LLP, respectfully asks this Court to reconsider and vacate that portion of its Order filed on March 30, 2010, dismissing with prejudice those counts of NMH's Complaint asserting claims for breach of fiduciary duty, negligence, and gross negligence (the "Common Law Non-Fraud Tort Claims") on the ground that such claims were preempted by New York's Martin Act (N.Y. Gen. Law art. 23-a).

## PRELIMINARY STATEMENT

On April 7, 2010, the New York State Attorney General, who is exclusively responsible for enforcing the Martin Act, sought leave from the First Department of the State Appellate Division to participate as *amicus curiae* in two pending appeals before that Court — *Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management, Inc.*, No. 603755/2008 (N.Y.Sup. January 28, 2010), and *CMMF, LLC v. J.P. Morgan Investment Management, Inc.*, No. 601924/2009 (N.Y. Sup. December 10, 2009)[1] —in order to present the Attorney General's view that his exclusive enforcement authority under the Act **does not preempt** private litigation of common-law claims whose source is independent of the statute, including "non-scienter-based common-law claims in the investment securities context." *See* copies of the *amicus* motion and brief filed by the Attorney General, attached hereto as Exhibits 1 and 2 respectively.

As discussed below, in light of the Attorney General's *amicus* motion and brief, and its position with respect to the Martin Act preemption issue that was previously decided in favor of

---

[1] In its submissions to this Court, JPM relied on both of these cases as being analogous to the issues presented here. Letter from Richard A. Rosen, Partner, Paul, Weiss, Rifkind, Wharton & Garrison LLP, to Honorable Paul A. Crotty, United States District Judge, Southern District of New York (February 2, 2010) (Letter on file with Court).

1

Defendants JP Morgan Chase Bank, N.A. and Todd Brown (together, "JPM"), the Court should grant reconsideration and vacate that portion of its Order dismissing NMH's Common Law Non-Fraud Tort Claims with prejudice.  Inasmuch as the Attorney General is charged with sole enforcement of the Martin Act, his reasonable views on the interpretation of that state statute are entitled to substantial deference and should not be rejected out of hand.  This is particularly true insofar as the issue to be decided here directly implicates the scope of the Attorney General's enforcement authority under the Act and the extent to which allowing private litigation of common law claims would undermine or impinge upon his authority.  The Attorney General's position demonstrates that to uphold the dismissal of such claims as preempted by the Martin Act would constitute a mistake of law that warrants the requested reconsideration and vacatur.

Among other things, as the Attorney General's filings reflect the language, intent and policies behind the Martin Act do not clearly support abrogation of long-standing common law remedies or preemption of claims such as breach of fiduciary duty and negligence that exist independently of the statute, and assertion of such claims in an investment securities case (even one involving allegations of securities fraud) cannot be said to involve a prohibited private attempt to enforce the Act or pursue a private right of action under it.  Moreover, treating such private remedies as displaced by rather than supplemental to the Attorney General's enforcement authority would both eliminate a useful tool in combating fraud and deception in securities transactions but also cause courts to be regularly called upon to delimit the scope of enforcement authority under the Martin Act without the participation of or input from the Attorney General.

Accordingly, even assuming *arguendo* (consistent with this Court's ruling in its Order) that the conduct underlying NMH's Common Law Non-Fraud Tort Claims falls within the purview of the Martin Act because such conduct involves fraud or deception in the securities

context, those claims should be reinstated in light of the Attorney General's position that the Act does not preempt them.

## FACTS AND PROCEDURAL HISTORY

For a complete and detailed recount of the facts and procedural history in this case, NMH refer this Court's attention to NMH's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.

By way of general background, JPM acted as the discretionary manager of approximately $130 million in assets for JPM's client NMH. In that capacity, JPM invested NMH's portfolio in home equity loan asset-backed securities, collateralized mortgage obligations and floating rate notes.

In its Complaint, NMH primarily alleges that JPM was aware that such securities were "subprime linked" and unsuitable for its conservative investment objective, and that JPM failed to disclose these risks, while it was simultaneously selling such securities from its own portfolio and instructing select clients to do the same. The Complaint contained ten counts, including one count of breach of contract, five counts of federal securities and common law fraud, and four counts of common law non-fraud tort (breach of fiduciary duty, negligence, and gross negligence) (the "Common Law Non-Fraud Tort Claims").

In its Order, the Court granted JPM's Fed. R. Civ. P. 12(b)(6) motion to dismiss all ten counts except for the breach of contract claim (Count One), as to which the Court retained supplemental jurisdiction but granted JPM's request to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Although the Court permitted NMH to amend the Complaint and cure any deficiencies identified in the Order with respect to the securities and common law fraud claims in Counts Three through Seven, the Court dismissed the Common

Law Non-Fraud Tort Claim on the ground that such claims were preempted by the Martin Act and thus amendment of those claims would be futile.

In relevant part, the Court reasoned (Order at pp. 9-12, 20) that the Common Law Non-Fraud Tort Claims were "predicated on allegations of nondisclosure and material omissions in connection with the purchase and sale of securities," and as such, those claims targeted conduct "directly covered by the Martin Act," which prohibits various fraudulent and deceitful practices in securities transactions but does not require proof of intent to defraud or scienter.  Inasmuch as "[t]he Martin Act empowers the New York Attorney General, and only the New York Attorney General, to bring suit for violations of the Martin Act," the Act preempted common law claims "in the securities context" based on conduct that would support a statutory claim.  *Id.* at pp. 9-11.  The Court also noted in the alternative that even if a non-fraud claim involving securities that did not allege dishonesty or deception could be deemed outside the purview of the Martin Act, here each of the Common Law Non-Fraud Tort Claims was "predicated on fraud and deception."  *Id.* at pp. 11-12 (distinguishing *Louros v. Kreicas*, 367 F. Supp. 2d 572, 595-96 (S.D.N.Y. 2005)).[2]

## ARGUMENT

### THE COURT SHOULD GRANT RECONSIDERATION OF THE DISMISSAL WITH PREJUDICE OF NMH'S COMMON LAW NON-FRAUD TORT CLAIMS AS PREEMPTED BY THE MARTIN ACT

**A.     Standard Of Review.**

Motions for reconsideration are governed by the standards and procedural requirements contained in Local Civ. R. 6.3 and Fed. R. Civ. P. 59(e).  A party moving for reconsideration must submit a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked" "that might materially have influenced its earlier

---

[2]     In the alternative, NMH respectfully requests that the Court reconsider its dismissal of the claims "with prejudice" and allow NMH to demonstrate that its claims meet the standard in *Louros.*

decision." Local Civ. R. 6.3; *Anglo American Ins. Co. v. Calfed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (citation omitted). In addition, reconsideration is appropriate "to correct clear error, prevent manifest injustice, or review the court's decision in light of . . . new evidence" or an intervening change in law. *Zahrey v. City of New York*, No. Civ. 98-4546 (DCP), 2009 WL 1024261, *1 (S.D.N.Y. April 15, 2009); *see also Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). As explained below, NMH satisfies that standard here.

**B.     Based On The Attorney General's Position That The Martin Act Does Not Preempt Non-Fraud Tort Claims, The Court Should Grant Reconsideration And Vacate The Portion Of Its Order Dismissing The Common Law Non-Fraud Tort Claims As Preempted By The Martin Act.**

   **1.     Reconsideration Is Warranted To Consider The Views Of The Attorney General In Recently Filed *Amicus* Submissions Regarding The Scope Of His Martin Act Enforcement Authority And The Extent To Which That Authority Is Impinged Upon By Private Litigation Of Common Law Claims.**

Because the Attorney General has enforcement responsibility under the Martin Act, his position on the state law question of the extent to which the Martin Act preempts private common law claims should be entitled to substantial deference and should be afforded great weight. *See Matter of Trump-Equitable Fifth Ave. Co. v. Gliedman*, 62 N.Y.2d 539, 545 (1984) ("Interpretation given a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the ['plain words of the'] governing statute."); *Gunther v. Abrams*, 592 N.Y.S.2d 308, 308 (App. Div. 1st Dep't 1993) ("[D]eference must be given to the interpretation of the statute advanced by the Attorney General.")

Indeed, in analogous circumstances, courts have repeatedly held that reconsideration is warranted where, as here, a government agency, charged with the responsibility of administering

and implementing the law at issue, has filed an *amicus* brief.  *See Dougherty v. Teva Pharmaceuticals USA, Inc.*, No. Civ. 05-2336 (JCJ), 2007 WL 1165068, **2-6 & nn.11-14 (E.D. Pa. Apr. 9, 2007) (granting reconsideration and reversing prior decision based on Department of Labor ("DOL") *amicus* brief; according deference to DOL position in amicus brief); *cf. Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986, 986 n.* (7th Cir. 1993) (withdrawing earlier opinion based on *amicus* brief submitted by DOL in support of rehearing petition); *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Keystone Consol. Industries, Inc.*, 793 F.2d 810, 810 n.* (7th Cir. 1986) (granting rehearing and withdrawing earlier opinion based on *amicus* brief submitted by Internal Revenue Service in support of rehearing petition).

Reconsideration is particularly warranted here, where the Attorney General's views relate to the scope of his enforcement authority under a New York statute and would directly inform this Court's analysis on an unresolved issue of state law involving the extent to which litigation of certain private causes of action would impinge upon or undermine that authority.  Since courts holding that preemption of common law non-fraud tort claims in "covered" common law claims is necessary because non-scienter-based common law claims in a securities fraud case

**2.    The Court's Order Should Be Vacated To The Extent It Dismisses With Prejudice NMH's Common Law Non-Fraud Tort Claims, Given The Attorney General's Reasonable View Of His Exclusive Enforcement Powers Under The Martin Act As Neither Conflicting With Nor Preempting Private Litigation Of Such Traditional Claims Even In A Case Involving Securities Fraud**

In his *amicus* brief submitted in connection with the First Department appeal in *Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management Inc.*, No. 603755/2008 (N.Y.Sup. January 28, 2010), the Attorney General makes the following points in rejecting the view

adopted by some courts (and reflected in the Order under consideration) that "non-scienter-based common-law claims in the investment securities context" are preempted by the Martin Act:

(1) "[n]othing in the Martin Act suggests an intent [by the Legislature] to preempt private common-law causes of action, let alone the clear intent required to overcome the presumption against abrogation of common-law remedies," inasmuch as "[t]he text of the Martin Act does not address private common-law claims" but merely "vests the Attorney General with powers to investigate and prosecute fraudulent practices involving securities," nothing in "the statute's legislative history indicate[s] an intent to preempt common-law claims," "[a]nd the purpose or design of the Martin Act is in no way impaired by private common-law claims that exist independently of the statute, since statutory actions by the Attorney General and private common-law actions both further the same goal" of "combating fraud and deception in securities transactions";

(2) "even if private non-scienter-based common law claims had exactly the same elements as the Attorney General's claims under the Martin Act," "the common-law claims would not be barred because . . . [c]auses of action like breach of fiduciary duty and gross negligence have broad and deep roots at common law that are in no way derived from the Martin Act," and "[w]here well-recognized common-law causes of action exist entirely independently of the Martin Act, their assertion by a private plaintiff in a securities case cannot be described as a prohibited attempt to [privately] enforce the Martin Act itself";

(3) "[i]n any event, the proposed distinction between common-law fraud and non-scienter-based common-law claims is based on the mistaken premise that Martin Act claims and non-scienter-based common law claims have exactly the same elements," whereas in fact, "[j]ust like common-law fraud claims, common-law claims that do not require scienter nonetheless require a private plaintiff to prove one or more elements that the Attorney General need not establish under the Martin Act" (such as "proof of the existence of a fiduciary relationship" in the case of "a claim for breach of fiduciary duty," and proof of "'reckless disregard for the rights of others'" in the case of "a claim for gross negligence");

(4) "[t]he only two state appellate courts to consider the issue have held that the Martin Act does not bar non-scienter-based common-law claims in the investment securities context" (citing *Scalp & Blade, Inc. v. Advest, Inc.*, 281 A.D.2d 882, 883 (4th Dep't 2001), in *Rasmussen v. A.C.T. Envtl. Servs. Inc.*, 292 A.D.2d 710, 712 (3d Dep't 2002)), based on the reasoning that nothing in the Martin Act, or in the Court of Appeals cases construing it, precludes a plaintiff from maintaining common-law causes of action based on such facts as might give the Attorney General a basis for proceeding civilly or criminally against a defendant under the Martin Act;

(5) "[t]he state trial court and federal court decisions finding that the Martin Act affirmatively preempts independent common-law claims in securities cases frequently rely on a handful of state appellate decisions addressing condo and co-op offerings" that

7

are distinguishable because "private claims in th[e] field" of condo and co-op regulations "pleaded as common-law causes of action may in fact rely on [detailed] disclosure obligations [for condo and co-op offerings] arising from the Martin Act," which would "amount[ ] to a violation of the well-settled rule that private parties may not enforce the Martin Act," whereas "the Martin Act creates no [comparable] disclosure regime for investment securities"; and

(6) "[i]f private claims were preempted when they 'fall within the purview of the Martin Act'" or overlap with claims that could be brought under that Act, "then courts would be regularly called upon to [inappropriately] decide questions about the proper reach of the Martin Act in private litigation" and delimit the scope of the Attorney General's Martin Act powers "without the participation of the Attorney General."

(*See* Ex. 2 at pp. 10-19.)

Here, the Attorney General's *amicus* briefing thoroughly and carefully analyzes the issues and facts concerning the question of whether traditional common law causes of action such as breach of fiduciary duty and negligence are preempted by the Martin Act, which he has had longstanding authority to interpret as part of his enforcement responsibility. His position on this unresolved question of state law does not contravene the Act's plain language nor is it irrational in light of the statute's history and policies. In light of these considerations, that position should be accorded controlling deference in this case, and NMH's Common Law Non-Fraud Tort Claims, previously dismissed with prejudice on the basis of the Martin Act's preemptive effect, should be reinstated.

## **CONCLUSION**

For the foregoing reasons, the Court should grant NMH's motion for reconsideration, vacate the portion of its Order dismissing NMH's Common Law Non-Fraud Tort Claims with prejudice as preempted by the Martin Act, and reinstate those claims. In the alternative, NMH respectfully requests that the Court reconsider its dismissal of the claims "with prejudice" and allow NMH to demonstrate that its claims meet the standard in *Louros.*

Dated: April 13, 2010
      New York, New York

Respectfully submitted,

KOBRE & KIM LLP

 /s/ Michael S. Kim
Michael S. Kim
(michael.kim@kobrekim.com)

Steven W. Perlstein
(steven.perlstein@kobrekim.com)

Carrie A. Tendler
(carrie.tendler@kobrekim.com)

800 Third Avenue
New York, New York 10022

Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for NM Homes One, Inc.*