UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NM HOMES ONE, INC., | |
| Plaintiff, | |
| v. | 08 CV 7679 (PAC) |
| JP MORGAN CHASE BANK, N.A. and TODD BROWN, | ECF CASE |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
212-373-3000 (Phone)
212-757-3990 (Fax)

*Attorneys for Defendants JP Morgan Chase Bank, N.A. and Todd Brown*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ...................................................................................................1

Statement of Relevant Facts ..........................................................................................2

Argument ........................................................................................................................6

I.    PLAINTIFF CANNOT SUSTAIN ITS CLAIM FOR BREACH OF
      CONTRACT...........................................................................................................6

      A.    Defendants' Investments For The Account Complied Fully With
            The Investment Guidelines ........................................................................7

II.   PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED.............................11

      A.    Plaintiff's Tort Claims Fail Because They Merely Restate Its
            Breach of Contract Claim ........................................................................11

      B.    Plaintiff's Tort Claims Should Be Dismissed As Duplicative
            Irrespective of Whether the Court Dismisses the Breach of
            Contract Claim .........................................................................................16

      C.    The Presence of an Individual Defendant Does Not Shield
            Plaintiff's Tort Claims from Dismissal.....................................................17

III.  PLAINTIFF'S NEGLIGENCE CLAIM IS INDEPENDENTLY BARRED
      BY THE LIMIT ON LIABILITY IN THE PARTIES' CONTRACT .................19

CONCLUSION.............................................................................................................22

## Table of Authorities

**Page(s)**

CASES

*Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Pub. Co.*,
No. 07 Civ. 756 (PKC)(RLE), 2008 WL 4185736 (S.D.N.Y. Sept. 5, 2008) .................15, 16

*Altman* v. *New York Bd. of Trade, Inc.*,
860 N.Y.S.2d 94 (1st Dep't 2008) ......................................................................................16

*Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*,
2010 N.Y. Slip Op. 51362, 2010 WL 2977934 (Sup. Ct. N.Y. County Jan. 28,
2010) .................................................................................................................................8, 9

*Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*,
2010 N.Y. Slip Op. 08644, 2010 WL 4721590 (1st Dep't Nov. 23, 2010).......................9, 15

*Bank of New York* v. *First Millennium, Inc.*,
607 F.3d 905 (2d Cir. 2010) .................................................................................................6

*In re Barclays Bank PLC Sec. Litig.*
No. 09 Civ.1989 (PAC), 2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) .......................................6

*Brooks* v. *Key Trust Co. Nat'l Ass'n,*
809 N.Y.S. 2d 270 (3d Dep't 2006)......................................................................................12

*CDR Creances S.A.* v. *Euro-American Lodging Corp.,*
837 N.Y.S.2d 609 (1st Dep't. 2007)......................................................................................18

*Celle* v. *Barclays Bank P.L.C.,*
851 N.Y.S.2d 500 (1st Dep't 2008) ......................................................................................16

*Champion Home Builders Co.* v. *ADT Sec. Servs., Inc.,*
179 F. Supp. 2d 16 (N.D.N.Y. 2001)....................................................................................19

*Charter Township of Clinton Police and Fire Retirement System* v. *KKR Fin.
Holdings LLC*
No. 09 Civ. 1989 (PAC), 2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010)................................6

*Clark-Fitzpatrick, Inc.* v. *Long Island R. Co.,*
70 N.Y.2d 382 (N.Y. 1987) .................................................................................................18

*CMMF, LLC* v. *J.P. Morgan Investment Management Inc. et al.,*
No. 601924/09 (Sup. Ct. N.Y. County Dec. 10, 2009)......................................8, 10, 12, 14, 17

*CMMF, LLC* v. *J.P. Morgan Investment Management Inc. et al.*,
  2010 N.Y. Slip Op. 08628, 2010 WL 4721383 (1st Dep't Nov. 23, 2010)....................9, 14, 17

*Foster* v. *Kovner*,
  840 N.Y.S.2d 328 (1st Dep't 2007)....................................................................................16

*Guerrand Hermes* v. *J.P. Morgan & Co., Inc.*,
  769 N.Y.S.2d 240 (1st Dep't 2003)......................................................................8, 11, 12, 17

*In re Merrill Lynch & Co., Inc.*
  273 F. Supp. 2d 351 (S.D.N.Y. 2003) ....................................................................................3

*Kassover* v. *Prism Venture Partners, LLC*,
  862 N.Y.S.2d 493 (1st Dep't 2008)....................................................................................12

*Metropolitan Life Ins. Co.* v. *Noble Lowndes Intern., Inc.*,
  84 N.Y.2d 430 (N.Y. 1994) ....................................................................................................20

*Piercy* v. *Citibank, N.A.*,
  424 N.Y.S.2d 76 (Sup. Ct. N.Y. County 1978) ....................................................................21

*Rabin* v. *Mony Life Ins. Co.*,
  No. 06 Civ. 775(LTS)(KNF), 2009 WL 4060978 (S.D.N.Y. Nov. 19, 2009)..........................9

*Richardson* v. *Allianceone Receivables Mgmt., Inc.*,
  No. 03 Civ. 5519 (DLC), 2004 WL 867732 (S.D.N.Y. April 23, 2004)...................................3

*Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*,
  No. 07 Civ. 376 (JMB), 2008 WL 2275902 (S.D.N.Y. 2008) .........................................13, 15

*Saint Vincent Catholic Medical Centers* v. *Morgan Stanley Inv. Mgmt. Inc.*,
  2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010)..............................................................................6

*Sommer* v. *Federal Signal Corp.*,
  79 N.Y.2d 540 (N.Y. 1992) ...........................................................................................19, 20

*Stella Flour & Feed Corp.* v. *Nat'l City Bank of New York*,
  136 N.Y.S.2d 139 (1st Dep't 1954).......................................................................................16

*Travelers Indem. Co. of Conn.* v. *Losco Group, Inc.*,
  136 F. Supp. 2d 253 (S.D.N.Y. 2001) ..................................................................................19

*Trumball Investments, LTD* v. *Wachovia Bank*,
  2005 WL 6148880 (E.D.Va. Apr. 15, 2005) ........................................................................20

*Unclaimed Prop. Recovery Serv., Inc.* v. *UBS PaineWebber Inc.*,
  870 N.Y.S.2d 361 (1st Dep't 2009) .......................................................................................16

*Vladimir* v. *Cowperthwait*,
    839 N.Y.S.2d 761 (1st Dep't 2007) ................................................................8, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................3, 6

Fed. R. Civ. P. 12(c) ......................................................................................3, 6

Defendants JP Morgan Chase Bank, N.A. and Todd Brown respectfully submit this memorandum of law in support of their motion for judgment on the pleadings with respect to Count One of plaintiff's September 2, 2008 complaint (the "Complaint") and motion to dismiss the Second, Ninth, and Tenth Counts of the Complaint pursuant to Rules 12(c) and 12(b)(6) of the Federal Rules of Civil Procedure.

### Preliminary Statement

In this action, plaintiff is suing its investment manager for the breach of the agreement governing the management of its discretionary account and for negligence, gross negligence, and breach of fiduciary duty arising out of investments that plaintiff now claims were unsuitable.

Less than two months ago, the First Department affirmed the dismissal of substantially similar claims against J.P. Morgan Investment Management Inc. In *CMMF, LLC* v. *J.P. Morgan Investment Management Inc. et al.* and *Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*, the First Department dismissed both plaintiffs' breach of contract claims, which set forth nearly identical allegations to those alleged by plaintiff here. The *CMMF* court also dismissed that plaintiff's analogous non-fraud common law tort claims as duplicative of its breach of contract claim. As in those cases, plaintiff's allegations cannot sustain its claims for the following reasons:

*First*, the Discretionary Portfolio Mandate and the Investment Guidelines, which govern the management of plaintiff's account, expressly authorized the acquisition of the precise types of fixed income securities that defendants acquired for the account. As the First Department confirmed in *Assured* and *CMMF*, a claim for breach of contract does not lie when a discretionary investment manager is in compliance with the investment guidelines governing the management of a plaintiff's account. Plaintiff's

efforts to turn back the clock and salvage investment losses sustained as a result of the global financial crisis cannot be accomplished by alleging that defendant breached its contract by "invest[ing] [plaintiff] in inappropriate and unsuitable securities," where its agreements expressly authorized the purchase of those very securities. Judgment should therefore be entered for defendants as to plaintiff's breach of contract claim.

*Second*, plaintiff cannot avoid the consequences of the fatal flaws of its contract claim by reconstituting the same allegations as tort claims. New York courts routinely hold that tort claims should be dismissed as duplicative where the alleged conduct is governed by the parties' contracts.

*Third*, plaintiff's negligence claim is also barred by the limit on liability in the contract between the parties. Exculpatory clauses limiting liability to gross negligence or intentional wrongdoing are regularly enforced by courts. Indeed, the liability limitation provision here has been considered and enforced in the context of another investment management agreement.

Accordingly, defendants respectfully request that the Court dismiss plaintiff's remaining claims, with prejudice.

### Statement of Relevant Facts

The facts below are derived from the Complaint and from documents that are referred to and incorporated by reference in the Complaint. The documents describe each type of security that defendants were authorized to purchase for the account, as well

as other characteristics of the investments.  The documents also reflect that, as purchases were made, defendants disclosed to plaintiff all such information.[1]

In a letter to Michael Murr—the Co-Chairman of NM Homes' Board of Directors (Compl. ¶ 26) and majority owner of NM Homes—dated October 24, 2006, defendant Todd Brown described, among other things, the Enhanced Cash strategy, the investment strategy that Murr selected for the account. [2]  (11/7/08 Rosen Decl. Ex. A, at 3; *see also* Compl. ¶ 28.)

---

[1]   Copies of the documents cited in this memorandum were previously submitted to the Court in connection with defendants' first motion to dismiss as exhibits to the Declaration of Richard A. Rosen, dated November 7, 2008 (docket entry no. 18) (the "11/7/08 Rosen Declaration" or "11/7/08 Rosen Decl."). Because some of these documents were previously filed under seal, a courtesy copy of the 11/7/08 Rosen Declaration is submitted herewith.  The Court may consider all of these documents on this motion.  *See Richardson* v. *Allianceone Receivables Mgmt., Inc.*, No. 03 Civ. 5519 (DLC), 2004 WL 867732, at *2 (S.D.N.Y. April 23, 2004) (citation omitted) (in deciding a Rule 12(c) motion, "[i]n addition to the pleadings, the court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"); *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) ("In deciding a Rule 12(b)(6) motion, the Court may consider the following materials:  (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint. . . ."), *aff'd sub nom.*, *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

[2]   The relevant portion of the October 24 Letter reads:

> Enhanced Cash
> Designed for assets with a time horizon of nine months or more, the taxable fixed income Enhanced Cash strategy seeks to maximize returns while providing insulation from principal loss and achieving a compelling yield advantage over money market funds.  The strategy accomplishes its principal preservation objective by investing a large component of the portfolio (typically 50% or more) in floating rate securities which provide a buffer to the portfolio by resetting at higher yields as interest rates rise.  The yield advantage portion of the objective is realized by investing the remaining funds in securities maturing modestly outside of the money market fund universe (usually between 13 and 24 months), capitalizing on the additional yield offered by a steep yield curve.  The strategy is characterized by its conservative nature as witnessed by its high credit quality and modest duration or interest rate positioning (1 year or less by guidelines).  Typical investments are USD-denominated and include CDs,

Three of the "[t]ypical investments" listed for the strategy—ABSs (asset-backed securities), Corporates (which include floating rate notes), and CMBS (collateralized mortgage-backed securities)—are the same categories of securities that the Complaint now alleges were "inappropriate and unsuitable" for the account.[3]  Similarly, the Investment Guidelines ("Guidelines"), which were attached to the executed Discretionary Portfolio Mandate ("Mandate"), expressly list as potential investments for the account, "Asset-backed securities," "Collateralized Mortgage Obligations," and "Corporate securities," which include corporate floating-rate notes.[4]  Lastly, plaintiff received an "Investment Management Account Review," which listed each of the securities held in the account and specifically noted the security type (*e.g.*, ABS, CMO, or Corporate).[5]

On September 2, 2008, plaintiff filed the Complaint asserting ten claims: breach of contract (Count One), breach of fiduciary duty (Count Two), securities fraud claims under § 10(b) of the Exchange Act and Rule 10b-5 (Counts Three through Six), common law fraud (Count Seven), negligent misrepresentation (Count Eight), negligence (Count Nine), and gross negligence (Count Ten). On November 7, 2008, defendants moved to dismiss Counts Two through Ten of the complaint.  On November 21, 2008, in

---

Supranationals/Sovereigns, CDs Repurchase Agreements, ABS, Corporates, CMBS (non-callable real estate debt), Time Deposits, Agencies, Mortgages and Treasuries.

(11/7/08 Rosen Decl. Ex. A, at 3.)

[3]   (*See* Compl. ¶ 39 (allegations concerning "home equity loan asset backed security ('ABS-HEL')"); ¶ 40 (allegations concerning "collateralized mortgage obligation ('CMO')"); ¶ 42 (allegations concerning "floating rate notes ('FRN')").)

[4]   (*See* 11/7/08 Rosen Decl. Ex. B, last two pages.)

[5]   (*See, e.g.*, 11/7/08 Rosen Decl. Exs. C-D; *see also* Compl. ¶¶ 87-88.)

its opposition to the motion to dismiss, plaintiff voluntarily withdrew Count Eight (negligent misrepresentation).  On February 2, 2010, defendants requested permission to file a motion for judgment on the pleadings with respect to the remaining claim, Count One (breach of contract).

On March 30, 2010, this Court granted defendants' motion to dismiss in its entirety, granted plaintiff leave to replead its fraud claims (Counts Three through Seven) only, and dismissed the remaining non-fraud common law tort claims (Counts Two, Nine and Ten) with prejudice as preempted by the Martin Act.  Because the Court determined that the non-fraud common law tort claims were barred by the Martin Act as a matter of law, it did not reach the question of whether such claims should also be dismissed on the alternative grounds raised by defendants' motion.  This Court also granted defendants' request for permission to move for judgment on the pleadings with respect to Count One (breach of contract).

Upon plaintiff's motion for reconsideration on the issue of Martin Act preemption, the Court reinstated the three non-fraud common law tort claims that had been dismissed with prejudice, Count Two (breach of fiduciary duty), Count Nine (negligence) and Count Ten (gross negligence).

On January 5, 2010, this Court ordered that briefing on defendants' motion for judgment on the pleadings with respect to the breach of contract claim and on the alternative grounds for dismissal of the three previously dismissed non-fraud common law tort claims be filed on January 21, 2011.

**Argument**

**I.**

**PLAINTIFF CANNOT SUSTAIN ITS
CLAIM FOR BREACH OF CONTRACT**

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings. . . . To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bank of New York* v. *First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citations and quotations omitted).

Plaintiff cannot sustain a claim for breach of contract as a matter of law because plaintiff does not—and cannot—allege that defendants acted in contravention of the terms of the Mandate or Guidelines, which expressly governed the types of and limits on the securities that were suitable for plaintiff's account.

Indeed, as Your Honor recently recognized in other cases involving the financial crisis, conclusory and hindsight-based allegations that a defendant failed to foresee or predict the unparalleled crisis in the real estate and credit markets are generally insufficient to state a claim. *Cf. Charter Township of Clinton Police and Fire Retirement System* v. *KKR Fin. Holdings LLC*, No. 09 Civ. 1989 (PAC), 2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ.1989 (PAC), 2011 WL 31548, at *1 (S.D.N.Y. Jan. 5, 2011) (dismissing securities claims and recognizing that the "sudden collapse [in real estate prices] cascaded through the financial markets, causing distress in the securities issued by banks and other financial institutions to finance real estate investment"). *See also Saint Vincent Catholic Medical*

*Centers* v. *Morgan Stanley Inv. Mgmt. Inc.,* 2010 WL 4007224, at *4 (S.D.N.Y. Oct. 4, 2010) (Castel, J.) (dismissing alleged violations of ERISA's prudence and diversification requirements stemming from an investment manager's selection of mortgage-backed securities for plaintiff's account where "plaintiffs premise[d] their theory of liability on the poor results of the investments").

### A.   Defendants' Investments For The Account Complied Fully With The Investment Guidelines

Plaintiff alleges that defendants breached the "Discretionary Portfolio Mandate by investing the Account in a manner that clearly contradicted the investment objectives and wholly disregarded the risk profile set forth therein."  (Compl. ¶ 126.) Specifically, the Complaint alleges that the agreement "clearly set forth NMH's investment objectives, which was [sic] primarily the preservation of capital" and, "in contravention of NMH's stated objective of preservation of capital, JPM invested NMH in inappropriate and unsuitable securities collateralized with subprime loans and other types of mortgage loans as well as securities issued by financial institutions issuing and holding subprime-collateralized securities."  (*Id.* ¶¶ 6-7.)   The Guidelines, however, expressly list as appropriate the very investments about which plaintiff now protests, including "Asset-backed securities," "Collateralized Mortgage Obligations," "Corporate securities," and "mortgage-backed securities."  (11/7/08 Rosen Decl. Ex. B, last two pages.)

Thus, plaintiff does not allege—nor can it—that the securities complained of were not fully contemplated and identified in the Guidelines as suitable for the account, or that the percentage limits imposed by the Guidelines for various types of investments were ever exceeded.  Where, as here, defendants' purchases were expressly

authorized by the underlying contract, plaintiff's claims cannot stand and should be dismissed. *See CMMF, LLC* v. *J.P. Morgan Investment Management Inc. et al.*, No. 601924/09, at 6 (Sup. Ct. N.Y. County Dec. 10, 2009), *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383, at *1 (1st Dep't Nov. 23, 2010);[6] *Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*, 2010 N.Y. Slip Op. 51362, 2010 WL 2977934 at *7 (Sup. Ct. N.Y. County Jan. 28, 2010), *aff'd*, 2010 N.Y. Slip Op. 08644, 2010 WL 4721590 at *9 (1st Dep't Nov. 23, 2010); *Guerrand Hermes* v. *J.P. Morgan & Co., Inc.*, 769 N.Y.S.2d 240, 237, 243 (1st Dep't 2003) (dismissing breach of contract, negligence, and breach of fiduciary duty claims based on allegation that defendant invested "entire discretionary account in high-risk emerging markets securities" because agreement specifically provided for investment in such securities, and defendant "was not contractually bound to hedge the discretionary account" as investments were "in compliance with the investment guidelines' diversification requirements").

In its complaint, plaintiff alleges that the types of securities defendants purchased did not meet the investment objectives specified in the Mandate. (*See, e.g.*, Compl. ¶ 7.) But, failure to meet an "objective" is not a valid basis for a claim, and defendants had no enforceable obligation to meet any such aspirational goal.[7] Moreover, the Guidelines identify the concrete, detailed quantitative requirements that the parties agreed defendants were to follow in implementing the objective of the account. Thus, for

---

[6]   The unpublished decision of Justice Schweitzer in *CMMF, LLC* v. *J.P. Morgan Investment Management Inc. et al.*, No. 601924/09, dated December 10, 2009 is submitted herewith as Exhibit A to the Rosen Declaration dated January 21, 2011.

[7]   *See Vladimir* v. *Cowperthwait*, 839 N.Y.S.2d 761, 763 (1st Dep't 2007) (finding investment manager not liable to investor for failure to achieve objective).

the account's investment goal of "provid[ing] a high level of current income consistent with preservation of capital," the Guidelines expressly authorized defendant to invest up to 50% of the account in "Corporate Securities," up to 40% in "Mortgage Securities," and 60% in "Asset-backed securities." (*See* 11/7/08 Rosen Decl. Ex. B at 7-8.)  Under such circumstances, plaintiff cannot state a claim for breach of contract.

Indeed, the First Department reached the same conclusion in two separate cases against J.P. Morgan Investment Management that are substantively identical to the breach of contract claim alleged here.  It recently affirmed the dismissal of breach of contract claims insofar as the claims rested on allegations that defendant's discretionary investment decisions were made in contravention of the client's investment objectives. *CMMF*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383 at *3; *Assured*, 2010 N.Y. Slip Op. 08644, at 22, 2010 WL 4721590 at *9.  Plaintiff's breach of contract claim arises from the purchase of the very same types of securities for an account with an investment objective similar to those at issue in the complaints filed in *Assured* and *CMMF*.  Those cases are therefore highly instructive.

In *Assured*, the court dismissed plaintiff's breach of contract claim where plaintiff did "not dispute that [J.P. Morgan's] investments never exceeded [the Guidelines'] percentages," even though J.P. Morgan allegedly "fail[ed] to manage the Accounts in a manner consistent with the contractual investment objective, *i.e.*, to obtain reasonable income while providing 'a high level of safety of capital.'"  *Assured*, 2010 N.Y. Slip Op. 51362, 2010 WL 2977934 at *5, *aff'd*, 2010 N.Y. Slip Op. 08644, 2010 WL 4721590 at *9; *see also Rabin* v. *Mony Life Ins. Co.*, No. 06 Civ. 775(LTS)(KNF), 2009 WL 4060978, at *4 (S.D.N.Y. Nov. 19, 2009) (dismissing breach of contract claim

-9-

premised upon allegation that interest rate earned was not "competitive" because such a description did not entail an obligation separate from meeting the identified benchmark that was, in fact, always met).[8]

Likewise, the court in *CMMF* held that plaintiff's allegation that the defendant "breached the [agreement's] stated objective of maintaining a high level of current income consistent with a low volatility of principal" was "at odds with the clear meaning of the [agreement] and the Guidelines which granted broad discretion to defendants regarding investment decisions for the account." *CMMF*, No. 601924/09, at 6, *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383. Further, the court held that "a claim for breach of contract with respect to an investment management account is not stated where the manager has discretion over the account and the manager is in compliance with the investment guidelines' diversification requirements" and that "even where an investment objective is stated in the contract, failure to meet the objective does not result in a breach of the contract." *Id.* at 6-7 (citations omitted).

The only breach of contract claim that was not dismissed in *CMMF* was based on an allegation that NM Homes has not made (and could not make) here. The plaintiff in *CMMF* alleges that certain mortgage-backed securities held in its account exceeded the specific percentage sector limit set forth in the Guidelines. In contrast with *CMMF*, NM Homes only generally alleges that defendants should have diversified the account, but points to no violation of any specific sector limit that could give rise to a

---

[8]   Indeed, the only portion of the breach of contract claim allowed to go forward in *Assured* involved an alleged breach of a specific provision of the parties' agreements not at issue here—an alleged violation of a contractual provision requiring that investments be made in compliance with Chapter 13 of the Delaware Insurance Code.

-10-

colorable claim for breach of contract. (*See, e.g.*, Compl. ¶ 50.) Apart from the diversification requirements in the agreement—those that the *CMMF* plaintiff claims were exceeded—an investment advisor has no duty to diversify an account. *See Guerrand Hermes*, 769 N.Y.S.2d at 243; *see also Vladimir*, 839 N.Y.S.2d at 763 (dismissing investor's claim where purchases were made within diversification limits).

Here, plaintiff claims no such specific breach. Nor does plaintiff claim that any of the detailed, quantitative investment criteria of the agreement were ever violated. Instead, plaintiff sets forth sweeping allegations that defendant breached the Mandate by investing the account in "inappropriate and unsuitable securities"—the very type of allegations that *Assured* and *CMMF* held were insufficient to state a claim. Accordingly, plaintiff cannot sustain its claim for breach of contract.

## II.

### PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED

Plaintiff's tort claims—which rely on the same underlying allegations as plaintiff's breach of contract claim—should all be dismissed because they allege no conduct that is not also the subject of the parties' contract.

### A.     Plaintiff's Tort Claims Fail Because They Merely Restate Its Breach of Contract Claim

Plaintiff's tort claims should be dismissed as duplicative of the breach of contract claim. In its tort claims, plaintiff purports to allege as torts the various wrongs it believes it suffered due to defendant's management of its discretionary investment account. But these matters are governed by the contractual relationship between the parties, which explicitly sets forth defendants' obligations and the type and quantities of securities that were suitable for plaintiff's investment account.

New York courts routinely hold—including the First Department in the analogous *CMMF* case—that tort claims that are merely duplicative of a breach of contract claim cannot stand. *See, e.g.*, *CMMF*, No. 601924/09, at 11-12, *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383 ("It is a well-established general rule that a cause of action for negligence cannot be stated by virtue of a breach of contractual obligations."); *Guerrand Hermes*, 769 N.Y.S.2d at 243 (dismissing negligence claim as duplicative of breach of contract claim); *Kassover* v. *Prism Venture Partners, LLC*, 862 N.Y.S.2d 493, 498 (1st Dep't 2008) (dismissing breach of fiduciary duty claim as duplicative of breach of contract claim).

Here, the complete overlap between plaintiff's tort claims on the one hand and its breach of contract claim on the other requires dismissal of the claims under prevailing law. As the court in *Brooks* v. *Key Trust Co. Nat'l Ass'n* explained:

> [D]efendants' role as [plaintiff's] financial advisor with discretionary authority to manage his investment accounts created a fiduciary duty. [However,] [t]he allegations underlying plaintiff's fiduciary duty claim . . . ***are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith***. As such, plaintiff has not set forth allegations that ***apart from the terms of the contract***, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties.

809 N.Y.S.2d 270, 273 (3d Dep't 2006) (emphasis added) (holding—in case where investment advisors were sued for, among other things, breach of contract and breach of fiduciary duty—that breach of fiduciary duty claim "is based on the same facts and theories as [plaintiff's] breach of contract claim and was properly dismissed as

duplicative") (cited in *Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*, No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *3 (S.D.N.Y. 2008)).

And that is precisely the case here.   Plaintiff alleges that defendant breached the "Discretionary Portfolio Mandate by investing the Account in a manner that clearly contradicted the investment objectives and wholly disregarded the risk profile set forth therein." (Compl. ¶ 126.) Plaintiff purports to recast this same theory in its tort claims by alleging, for example, that defendants breached a fiduciary duty by "investing heavily in securities which were contrary to Plaintiff's stated objectives" (*id.* ¶ 131); acted negligently in "purchasing unsuitable and unauthorized Subprime-Linked Securities" (*id.* ¶ 196); and, without specificity, were grossly negligent "in injuring the Plaintiff as described herein" (*id.* ¶ 202).   Yet, these claims allege ***exactly*** the same conduct that is alleged to be a breach of contract:   the Complaint alleges that the agreement "clearly set forth NMH's investment objectives, which was primarily the preservation of capital" and "in contravention of NMH's stated objective of preservation of capital, JPM invested NMH in inappropriate and unsuitable securities." (*Id.* ¶¶ 6-7.) For this reason, the claims must be dismissed.

This is the conclusion reached by the *CMMF* court.   There, the plaintiff pursued claims of breach of contract, breach of fiduciary duty, and negligence against JP Morgan Investment Management stemming from the purchase of the very same types of securities at issue here for an account with a similar investment objective.   The allegations in CMMF were that:

> [D]efendants breached [their] duty by saturating the portfolio with risky residential real estate securities to an extent not necessary to achieve the Merrill Lynch three-month LIBOR benchmark set forth in the Guidelines. . . .

-13-

> [and] defendants were negligent and violated their fiduciary duties to plaintiff, *inter alia*, by failing to disclose the credit standing of the collateral underlying real estate securities, failing to sell off risky real estate assets, and purchasing additional amounts of these securities as default rates on their underlying collateral began to rise.

*CMMF*, No. 601924/09, at 10-11, *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383.

The trial court in *CMMF* held that the plaintiff could not state a claim for negligence or breach of fiduciary duty based on these allegations that were either expressly raised in its breach of contract claim or encompassed by the contractual relationship. *Id.* at 12. The First Department concurred in this reasoning and held that lower court "properly dismiss[ed] [the negligence and breach of fiduciary duty] claims as being duplicative of the breach of contract cause of action." *CMMF*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383, at *2.

Plaintiff here makes nearly identical allegations to those dismissed in *CMMF*. Plaintiff alleges, for example, that "JPM breached its fiduciary duties to NMH and violated NMH's rights by investing NMH in unsuitable securities that were inextricably linked to subprime mortgages and that had long-term maturities" (Compl. ¶ 3), "failed to move NMH out of Subprime-Linked Securities throughout the first, second, and third quarters of 2007, despite the growing problems in that sector" (*id.* ¶ 10), and "failed to disclose that the [collateralized mortgage obligations, home-equity loan asset backed securities, and floating-rate notes], though not all technically subprime-backed, were subprime-linked." (*Id.* ¶ 73). As in *CMMF*, plaintiff's tort claims fail to allege any conduct that falls outside the purview of the Mandate and the Guidelines, which set forth the limits on the type and allocation of the securities purchased for

plaintiff's account and govern defendants' obligations to provide periodic statements to plaintiff.[9]

Accordingly, plaintiff's tort claims should be dismissed as a matter of law as duplicative of the breach of contract claim. *See Alitalia Linee Aeree Italiane, S.p.A.* v. *Airline Tariff Pub. Co.*, No. 07 Civ. 756 (PKC)(RLE), 2008 WL 4185736, at *9 (S.D.N.Y. Sept. 5, 2008) (citing *Brooks*, 809 N.Y.S.2d at 272-73) (upholding dismissal of claim for breach of investment advisor's fiduciary duty because allegations of failure to prudently manage discretionary portfolio "are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship"); *Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*, No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *3 (S.D.N.Y. 2008) (citing *Brooks*, 809 N.Y.S.2d at 272-73) (dismissing breach of fiduciary duty claim where supposed breach involved "a failure to perform duties that are contractual in nature, as compared to affirmative acts of betrayal or fraud that violate standards of conduct beyond those bargained for in the contract").

---

[9]  Nor is the decision of the First Department in *Assured* inconsistent with the view that plaintiff's tort claims should be dismissed as duplicative.  In *Assured*, while Justice Kapnick never reached the issue of duplicativeness, the First Department held—without explanation—that plaintiff's non-fraud tort claims were not duplicative of its contract claim. *See Assured*, 2010 N.Y. Slip Op. 08644, 2010 WL 4721590, at *8 (1st Dep't Nov. 23, 2010).  It stands to reason that Assured's tort claims survived because the contract claim in that case was limited to the issue of whether JPMorgan breached the provision of the contract requiring that the investments in the portfolio be in compliance with Chapter 13 of the Delaware Code.  The tort claims in that case do not overlap with that question of statutory compliance.  Unlike in *Assured*, the allegations underlying this plaintiff's non-fraud tort claims merely recast as tort claims conduct that plaintiff contends was inconsistent with the contractual relationship.

**B.   Plaintiff's Tort Claims Should Be Dismissed
As Duplicative Irrespective of Whether the
Court Dismisses the Breach of Contract Claim**

Dismissal of the tort claims as duplicative is appropriate, even if the Court

dismisses the breach of contract claim.  The prohibition against pleading duplicative tort

claims serves to prevent plaintiffs from recasting conduct properly governed by contract

as a tort. *See Stella Flour & Feed Corp.* v. *Nat'l City Bank of New York*, 136 N.Y.S.2d

139, 145 (1st Dep't 1954) ("To constitute a tort, the act or commission must be entirely

independent of contract right.") (citation omitted), *aff'd*, 308 N.Y. 1023 (N.Y. 1955).

The rule is not designed to prevent overlapping allegations or alternative theories from

going forward.

As a result, courts regularly dismiss tort claims as duplicative, even if the

contract claim is also dismissed.  *See, e.g.*, *Alitalia*, 580 F. Supp. 2d at 294 (S.D.N.Y.

2008) (dismissing breach of contract claim as well as claims for negligence, gross

negligence and breach of fiduciary duty as duplicative of contract claims); *Unclaimed

Prop. Recovery Serv., Inc.* v. *UBS PaineWebber Inc.*, 870 N.Y.S.2d 361, 362 (1st Dep't

2009) (upholding dismissal of both breach of contract claim for failure to state a claim

and unjust enrichment claim as duplicative of contract claim); *Celle* v. *Barclays Bank

P.L.C.*, 851 N.Y.S.2d 500, 501 (1st Dep't 2008) (upholding dismissal of breach of

contract claim for failure to state a claim and claims for breach of fiduciary duty, fraud,

and promissory estoppel as duplicative of contract claim); *Altman* v. *New York Bd. of

Trade, Inc.*, 860 N.Y.S.2d 94, 95 (1st Dep't 2008) (upholding dismissal of breach of

contract claims for failure to state a claim and fraud claim as duplicative of contract

claim); *see also Foster* v. *Kovner*, 840 N.Y.S.2d 328, 334 (1st Dep't 2007) ("[A] court

will dismiss as duplicative a cause of action for breach of fiduciary duty based entirely on allegations supporting a breach of contract claim, even if that claim is unenforceable.").

The First Department's decision in *Guerrand Hermes* v. *J.P. Morgan & Co., Inc.* is particularly instructive.  769 N.Y.S.2d 240 (1st Dep't 2003).  There, the court dismissed a breach of contract claim based on allegations that the defendant investment advisor invested the plaintiff's "entire discretionary account in high-risk emerging markets securities" because the parties' agreement specifically provided for investment in such securities, and defendant "was not contractually bound to hedge the discretionary account" as the investments were "in compliance with the investment guidelines' diversification requirements."  *Id.* at 242-43.  At the same time, the court upheld the dismissal of the plaintiff's negligence claim as duplicative.  *Id.* at 243.  Thus, regardless of whether plaintiff can sustain a claim for breach contract—which it cannot—plaintiff's tort claims should be dismissed as duplicative.

### C.  The Presence of an Individual Defendant Does Not Shield Plaintiff's Tort Claims from Dismissal

In addition, the fact that Mr. Brown is a party to the tort claims—and not the breach of contract claim—does not mean that, with respect to Mr. Brown, the tort claims cannot be dismissed as duplicative.  As discussed above, a viable breach of contract claim is not a condition to the dismissal of duplicative tort claims.  Indeed, this very argument was raised—and rejected—in the *CMMF* matter.  Both the lower court and the First Department squarely rejected CMMF's contention that suing the JP Morgan Investment Management employee assigned to manage plaintiff's account could somehow protect otherwise duplicative tort claims from dismissal.  *CMMF*, No. 601924/09, at 12, *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383.

-17-

The suggestion that duplicative tort claims should survive any time a plaintiff sued an individual defendant-employee is incorrect for at least two reasons:

*First*, plaintiff concedes that "Todd Brown of [JPMorgan]" served as "the fixed income portfolio manager for the Account." (Compl. ¶ 12.) Accordingly, although not a signatory to the contract, Mr. Brown was JPMorgan's agent with respect to executing its contractual duties. It would make no sense to hold that tort claims against a company are duplicative of a breach of contract claim, but then to sustain the very same tort claims against the individual employee through whom the corporate defendant acted. Such a holding would render the duplicativeness doctrine a nullity. Where, as here, the tort claims against the contracting corporation are based on the same facts and on the conduct of an individual employee who is being sued for the exact same tort claims, the dismissal of the tort claims against the corporation also requires dismissal of the tort claims against the individual.

*Second*, the rationale behind barring tort claims on duplicativeness grounds strongly supports dismissal of the tort claims against Mr. Brown. Plaintiff cannot pursue tort claims based on the same conduct that underlies its breach of contract claim because its remedies are defined by the contract it executed. *See Clark-Fitzpatrick, Inc.* v. *Long Island R. Co.*, 70 N.Y.2d 382, 389-90 (N.Y. 1987) ("[I]t is undisputed that the relationship between the parties was defined by a written contract," thus "plaintiff is now limited to recovery of damages on the contract" and is not entitled to recover in tort because "[e]ach of the[] allegations [underlying its tort claims], [] is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract"); *CDR Creances S.A.* v. *Euro-*

-18-

*American Lodging Corp.*, 837 N.Y.S.2d 609, 610-11 (1st Dep't. 2007) (holding that the trial court properly dismissed a breach of contract claim against non-signatory individual defendant as well as fraud and conversion causes of action against those defendants as duplicative of the contract claim).  Simply put, since plaintiff's rights are defined by its contract with JPMorgan, it cannot have any greater rights against Mr. Brown than it has against JPMorgan.

## III.

### PLAINTIFF'S NEGLIGENCE CLAIM IS INDEPENDENTLY BARRED BY THE LIMIT ON LIABILITY IN THE PARTIES' CONTRACT

In addition to being duplicative of its breach of contract claim, plaintiff's negligence claim (Count Nine) should be dismissed based on the liability limitation provision barring recovery for negligence.  The account's "General Terms for Accounts and Services," incorporated by reference in the Mandate, provide that defendants' liability is limited to direct damages incurred due to defendants' "gross negligence or willful misconduct." (*See* 11/7/08 Rosen Decl. Ex. E at 4.)

Under New York law, exculpatory clauses in commercial contracts "are enforceable to limit recovery for claims based on ordinary negligence." *Travelers Indem. Co. of Conn.* v. *Losco Group, Inc.*, 136 F. Supp. 2d 253, 256 (S.D.N.Y. 2001).  Indeed, "[a]bsent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced." *Sommer* v. *Federal Signal Corp.*, 79 N.Y.2d 540, 553 (N.Y. 1992); *see also Champion Home Builders Co.* v. *ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16, 23-24 (N.D.N.Y. 2001) (granting motion to dismiss negligence claim based on contract clause limiting liability to gross negligence).

The New York Court of Appeals has held that limiting a defendant's liability "to injuries to plaintiff caused by intentional misrepresentations, willful acts and gross negligence does not offend public policy." *Metropolitan Life Ins. Co.* v. *Noble Lowndes Intern., Inc.*, 84 N.Y.2d 430, 438 (N.Y. 1994) (finding that clause limiting liability to "damages arising out of [defendant's] willful acts or gross negligence" barred consequential damages); *cf. Sommer*, 79 N.Y.2d at 554 (noting that courts only refuse to enforce on public policy grounds exculpatory clauses that seek to bar all liability including for gross negligence). "A limitation on liability provision in a contract represents the parties' Agreement on the allocation of risk of economic loss . . . which the courts should honor. . . . [The parties] may later regret their assumption of the risk . . . but the courts let them lie on the bed they made." *Metropolitan Life*, 84 N.Y.2d at 436.

Courts are especially wary of circumventing liability limitation clauses in investment management agreements between sophisticated parties. In *Trumball Investments, LTD* v. *Wachovia Bank*, for example, an investor sued Wachovia Bank under a discretionary investment management agreement with an exculpatory clause that mirrors the one at issue here: "you shall be liable only for losses caused by ***gross negligent management or actual wrongdoing***." 2005 WL 6148880, at *4 (E.D.Va. Apr. 15, 2005) (emphasis in original). The court held that "the exculpatory clauses [in discretionary investment agreements] are agreements between sophisticated parties to allocate the risk of negligence in the management of discretionary accounts and therefore

-20-

do not offend the public interest. . . . [Thus,] [c]ourts regularly enforce exculpatory clauses in discretionary investment accounts." *Id.* (listing cases).[10]

   Accordingly, NM Homes may not assert a negligence claim in contravention of its contract with defendants.

---

10 *See also Piercy* v. *Citibank, N A* , 424 N.Y.S.2d 76, 77 (Sup. Ct. N.Y. County 1978), *aff'd*, 48 N.Y 2d 900 (N.Y. 1979) (dismissing negligence claim where discretionary investment contract limited liability to "willful misconduct"); Heitman Cap Mgmt., LLC, SEC No-Action Letter, 2007 WL 789073, at *3 (Feb. 12, 2007) (confirming that investment advisor's use of exculpatory clause, limiting liability to gross negligence, is not per se violation of Investment Advisors Act).

**CONCLUSION**

For the reasons set forth above, defendants respectfully request that the Court dismiss the remaining Counts of the complaint, with prejudice.

Dated: New York, New York
      January 21, 2011

                          **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____
    Richard A. Rosen (rrosen@paulweiss.com)
    John F. Baughman (jbaughman@paulweiss.com)
    Farrah R. Berse (fberse@paulweiss.com)
    Jennifer K. Vakiener (jvakiener@paulweiss.com)

    1285 Avenue of the Americas
    New York, New York  10019
    Tel.:  (212) 373-3000
    Fax:  (212) 757-3990

    *Attorneys for defendants JP Morgan Chase Bank, N.A. and Todd Brown*