UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x
:
:
:
NM HOMES ONE, INC.,                          :
:
                              Plaintiff,     :       08 CV 7679 (PAC)
:
v.                                           :       ECF CASE
:
JP MORGAN  CHASE  BANK,  N.A.  AND  TODD     :
BROWN,                                       :
:
                              Defendants.    :
:
:
————————————————————————— x


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AND FOR JUDGMENT ON THE PLEADINGS**


KOBRE & KIM LLP
Michael S. Kim
Steven W. Perlstein
Carrie A. Tendler

800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220


*Attorneys for Plaintiff NM Homes One Inc.*

**Table of Contents**

Page

Preliminary Statement ............................................................................... 1

Argument ....................................................................................................... 4

I.    JPM'S ARGUMENTS FOR DISMISSAL OF NMH'S TORT CLAIMS
      ARE WITHOUT MERIT. ................................................................... 4

      A.    JPM's Argument That NMH's Tort Claims Are Duplicative Should Be
            Rejected ..................................................................................... 4

            1.    NMH Sufficiently Alleges Claims For Negligence, Gross
                  Negligence And Breach of Fiduciary Duty. ................ 4

            2.    The Same Allegations Can Support Both NMH's Tort And
                  Contract Claims. ......................................................... 6

            3.    The Factual Allegations Supporting NMH's Tort Claims Are
                  Different From Those Supporting Its Contract Claim. .............. 11

            4.    NMH's Tort Claims Against Mr. Brown Cannot Be
                  Dismissed As Duplicative Because NMH Has Not Asserted
                  A Contract Claim Against Him ..................................... 12

            5.    Dismissal Of The Contract Claim Does Not Mandate
                  Dismissal Of The Tort Claims. .................................... 13

            6.    Plaintiff Is Permitted To Plead Alternative Theories ................ 14

      B.    JPM Cannot Hide Behind An Exculpatory Clause. .............................. 15

II.   NMH HAS PROPERLY PLED A BREACH OF CONTRACT CLAIM. ........ 17

      A.    The Complaint Complies With Rule 8's Notice Pleading
            Requirement. ........................................................................... 17

      B.    JPM Breached Numerous Provisions Of The Parties' Agreement. ....... 18

            1.    JPM Failed To Fulfill Its Obligations Under The Contract. ...... 18

            2.    JPM's Purported Compliance With The Concentration Limits
                  Does Not Excuse JPM's Other Breaches ................................. 22

Conclusion .................................................................................................. 25

# Table of Authorities

**Cases**                                                                    **Page(s)**

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ....................................................................14

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 896 N.E.2d 61
    (N.Y. 2008) ...............................................................................................................7

*In re Allegheny Int'l, Inc.*, 100 B.R. 244 (W.D. Pa. 1989) ................................................16

*Andersen v. Weinroth*, 849 N.Y.S.2d 210 (1st Dep't 2007) .........................................7, 11

*Ash v. New York Univ. Dental Center*, 564 N.Y.S.2d 308 (1st Dep't 1990) ....................16

*Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.,* 603755/08
    (JWS), 2010 WL 4721590 (1st Dep't Nov. 23, 2010)........................................ *passim*

*Bank of Am., N.A., v. Hensley Props., L.P.*, No. 2:07-CV-1584 (GEB),
    2007 WL 4591453 (E.D. Cal. Dec. 28, 2007) .............................................................9

*In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534 (S.D.N.Y. 2007) ....................17

*Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210 (N.Y. 2007)................................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................3, 17

*Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 729 N.Y.S.2d 142
    (2nd Dep't 2001)....................................................................................................... 6-7

*Bolt Elec. Inc. v. City of New York*, 53 F.3d 465 (2d Cir. 1995) .......................................3

*Bullmore v. Ernst & Young Cayman Is.,* 846 N.Y.S.2d 145 (1st Dep't 2007) .... 7-8, 10, 11

*CMMF v. J.P. Morgan Inv. Mgmt. Inc.*, 78 A.D.3d 562
    (1st Dep't Nov. 23, 2010) ...................................................................................... *passim*

*CNR Healthcare Network, Inc. v. 86 Lefferts Corp.*, 874 N.Y.S.2d 174
    (2d Dep't 2009).........................................................................................................23

*Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871
    (FJS), 2007 WL 951565 (N.D.N.Y. Mar. 27, 2007)................................................ 8-9

*Cornell v. T.V. Dev. Corp.*, 215 N.E.2d 349 (N.Y. 1966) ................................................15

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001).............................4

*Dayan v. Witkoff*, No. 109234/08 (RBL), 2009 WL 994791
    (N.Y. Sup. Ct. Apr. 6, 2009)......................................................................................7

**Page(s)**

*DeLeonardis v. Berg*, No. 97 CV 1655 (NG), 1998 WL 760338
    (E.D.N.Y. Sept. 15, 1998)..............................................................................19

*Dimsey v. Bank of New York*, No. 600391/2006 (KJM), 2006 WL 3740349
    (N.Y. Sup. Ct. Aug. 24, 2006) .....................................................................8, 10

*Drain v. Paragon Capital Mgmt. Corp.*, No. 22454-2006 (EJP), 2007 WL 2161904
    (N.Y. Sup. Ct. Jul. 3, 2007) ...............................................................................8

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..........................................................17

*Fanta v. Muriel Siebert & Co., Inc.*, No. 114837/06 (EJB), 2008 WL 3521334
    (N.Y. Sup. Ct. Jul. 11, 2008) ..............................................................................7

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205 (2d Cir. 2004) ........................3

*Gorham-Dimaggio v. Countrywide Home Loans, Inc.,* 592 F. Supp. 2d 283
    (N.D.N.Y. 2008) ...................................................................................................9

*Gross v. Sweet*, 400 N.E.2d 306 (N.Y. 1979) ...................................................16

*JP Morgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116 (PGG),
    2009 WL 321222 (S.D.N.Y. Feb. 9, 2009)........................................................14

*King v. Crossland Sav. Bank*, 111 F.3d 251 (2d Cir. 1997).................................9

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995) ...............................................24

*Kurtzman v. Bergstol*, 835 N.Y.S.2d 644 (2d Dep't. 2007)..................................4

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951
    (E.D. Mich. 1978) .............................................................................................9, 12

*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209 (2d Cir. 1987) ....................24

*Malik v. Toss 29, Inc*., No. SP 135/07 (SJF), 2007 WL 926297
    (N.Y. Dist. Ct. Mar. 29, 2007)...........................................................................15

*Mandelblatt v. Devon Stores, Inc*., 521 N.Y.S.2d 672 (1st Dep't 1987) ....................7, 11

**Page(s)**

*Richbell v. Jupiter Partners*, 765 N.Y.S.2d 575 (1st Dep't 2003).............................. 12-13

*Rodin Props.-Shore Mall, N.V. v. Ullman*, 694 N.Y.S.2d 374 (1st Dep't 1999).....7-8, 11

*Rodney v. KPMG Peat Marwick*, 143 F.3d 1140 (8th Cir. 1998)....................................24

*Ronzani v. Sanofi*, 899 F.2d 195 (2d Cir. 1990) ................................................................25

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) .....................................................25

*Scalp & Blade v. Advest*, 722 N.Y.S.2d 639 (4th Dep't 2001) .........................................19

*Sergeants Benevolent Assoc.Annuity Fund v. Renck,* No. 601735/03 (HJC),
    2004 WL 5278824 (N.Y. Sup. Jun. 2, 2005) ...........................................................19, 21

*Sergeants Benevolent Assoc. Annuity Fund v. Renck*, 796 N.Y.S.2d 77,
    (1st Dep't 2005) ......................................................................................................................9

*Shernoff v. Schimel*, 112 N.Y.S.2d 333 (Sup. Ct. 1952)............................................... 15-16

*Sommer v. Fed. Signal Corp.,* 593 N.E.2d 1365 (1992) .............................................. 7-10

*St. John's Univ. v. Bolton*, --- F. Supp. 2d ---, 2010 WL 5093347
    (E.D.N.Y. Dec. 10, 2010) ......................................................................................................14

*Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992) .....................................................3

*Univest Network, LLC v. AT&T Corp.*, No. 04 Civ. 9868 (MGC), 2006 WL 1017679
    (S.D.N.Y. April 19, 2006) .......................................................................................................5

*Terwilliger v. Terwilliger,* 206 F.3d 240 (2d Cir. 2000)...................................................17

*Williams v. J.P. Morgan & Co. Inc.*, 248 F. Supp. 2d 320 (S.D.N.Y. 2003)....................17

**Rules**

Federal Rules of Civil Procedure 8.................................................................................14, 22

Federal Rules of Civil Procedure 15.....................................................................................25

iv

**Page(s)**

**Other Authorities**

STANDARDS OF PRACTICE HANDBOOK (Tenth) (CFA Inst. 2010) ......................................9

Suitability of Inv. Advice Provided by Inv. Advisers; Custodial Account Statements for
    Certain Advisory Clients, Inv. Advisers Act Release No. IA-1406, 56 S.E.C. Docket
    724 (Mar. 16, 1994) ...........................................................................................9

Plaintiff NM Homes One, Inc. ("NMH") respectfully submits this memorandum of law in opposition to the motion for judgment on the pleadings and dismissal filed by Defendants JP Morgan Chase Bank N.A. ("JPM") and Todd Brown (together, "JPM" or "Defendants").

## Preliminary Statement

NMH vested JPM with discretionary authority to manage and invest approximately $130 million based on JPM's "absolute return focus", "global perspective" and status as "one of the world's leading fixed income managers", and NMH paid JPM handsome fees to "actively manage" the Portfolio.[1]  JPM failed to live up to both its contractual and fiduciary obligations.  By concentrating NMH's assets in securities linked to the high credit-risk subprime mortgage market (*i.e.*, securities collateralized with subprime loans and other types of mortgage loans, as well as securities that, while not backed by subprime mortgages, were issued or backed by lending institutions with a serious risk exposure to such mortgages) ("Securities"), JPM abandoned the agreed-upon investment strategy, ignored NMH's capital preservation objectives and low risk profile, and even though the market for securities linked to subprime mortgages had already evaporated, recklessly invested NMH's money in those very securities.

Remarkably, JPM trumpets the recent decisions of the First Department in *Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 603755/08 (JWS), 2010 WL 4721590 (1st Dep't Nov. 23, 2010) ("*Assured*") and *CMMF v. J.P. Morgan Inv. Mgmt. Inc.*, 78 A.D.3d 562 (1st Dep't Nov. 23, 2010) ("*CMMF*") as standing for the sweeping

---

[1] (*See* Declaration of Richard A. Rosen in Support of Defendants' Motion to Dismiss, dated November 7, 2008 ("Rosen Decl.") ¶2, Ex. A.)  All capitalized terms are given the meaning used in the Complaint where not otherwise defined.

proposition that an investment advisor who ignores its fiduciary and contractual obligations can evade responsibility for those failures merely because the advisor claims to have complied with one aspect of the parties' agreement.  But in fact, in both *Assured* and *CMMF*, claims against JPM by its clients have survived motions to dismiss and are moving forward to discovery.

The only question for the Court here is whether NMH has satisfied its notice pleading obligations under the Federal Rules.  NMH has met that standard and is thus entitled to discovery on what (if anything) JPM did to "actively manage" NMH's Account, to conduct "inten[se] top-down and bottom-up analysis" on the Securities it purchased and held in NMH's Account, and to abide by the agreed-upon investment strategy to preserve principal and act conservatively.  All of JPM's arguments are without merit and should be rejected.

*First*, the Complaint adequately pleads causes of action for negligence, gross negligence and breach of fiduciary duty.  NMH's tort claims are not duplicative of the contract claim because, as JPM itself has argued in another case, it is well-settled under New York law that the same conduct can be alleged in support of both tort and contract causes of action where an investment manager's contractual duties are separate and distinct from its fiduciary duties.  (*Infra* Part I.A.)  Moreover, even if that was not the law, some of the factual assertions supporting NMH's tort claims are different from those supporting the contract claim.  Further, having materially breached the agreement, JPM cannot seek to take advantage of its terms (*i.e.*, an exculpatory clause found in the contract), and in any event, public policy precludes fiduciaries like JPM from evading responsibility for negligently failing to do their job.  (*Infra* Part I.B.)

*Second*, the Complaint states a claim for breach of contract based on JPM's disregard of its obligations under the parties' contract.  JPM argues that it is insulated from liability for those breaches because it purchased the "quantities" and "type" of securities outlined in the parties' agreement.  As a threshold matter, whether JPM complied with those concentration limits is a question of fact that cannot be resolved on the pleadings.  Indeed, in breach of its fiduciary obligations, JPM failed to provide NMH (either before the case began or thereafter) documents sufficient to determine whether the concentration limits were met, and from the limited documents available to NMH, it is not clear that JPM always complied with the typical concentration limits.

Regardless, JPM's argument runs counter to settled New York principles of contract construction and should be rejected because compliance with the concentration limits would not operate to write all of JPM's other duties out of the contract.  Thus, even if JPM met its obligations with respect to the concentration limits, it still violated other portions of the relevant agreements, which among other things required JPM to purchase "short term" securities, select the most attractive securities within each sector, purchase low-risk securities best positioned to preserve principal and conduct "top-down and bottom-up analysis" on the securities it purchased for the Account.  (*Infra* Part II.)[2]

---

[2]     For the purpose of JPM's Motion, this Court accepts as true all of the facts alleged in the Complaint, s*ee e.g.*, *Bolt Elec. Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995), and draws all reasonable inferences in favor of NMH, *see e.g., Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004).  The plaintiff is only required to show "enough facts to state a claim to relief that is plausible on its face".  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", the defendants' motion to dismiss must be rejected.  *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992) (internal quotations omitted).

**Argument**

**I.   JPM'S ARGUMENTS FOR DISMISSAL OF NMH'S TORT CLAIMS ARE WITHOUT MERIT.**

    **A.  JPM's Argument That NMH's Tort Claims Are Duplicative Should Be Rejected.**

        1.  <u>NMH Sufficiently Alleges Claims For Negligence, Gross Negligence And Breach of Fiduciary Duty.</u>

JPM does not (and cannot) contend that the Complaint fails to satisfy the elements of the tort claims.[3]  The Complaint is replete with allegations of ways in which JPM acted negligently, grossly negligently and in breach of its fiduciary duties to NMH.   For example, the Complaint alleges that:

- JPM ignored its obligation to invest the Account in short-term securities, *i.e.*, those "maturing modestly outside the money market fund universe (usually between 13 and 24 months)." (Compl. ¶¶80, 83.)   JPM then tried to pull the proverbial wool over NMH's eyes by misrepresenting the maturity date.  (*Id.* ¶85.)   JPM previously argued that this conduct could not form the basis of a breach of contract claim, because there is no mandated maturity limit required by the agreement (*infra* n.11).   Assuming, without conceding, that position, JPM's acts still subject it to extra-contractual liability as recently shown by a settlement that the Securities & Exchange Commission ("SEC") reached with Charles Schwab.

  - The SEC settlement with Charles Schwab was based, in part, on Schwab's practice of understating maturity dates and confusing investors into thinking that the duration of a security was its maturity date.  (*See* Declaration of Carrie A. Tendler ("Tendler Decl.") ¶2, Ex. A.)   JPM engaged in the same type of misconduct with respect to NMH and routinely understated the maturities of the securities and confused the duration with the maturity.  (*See* Compl. ¶¶85-89.)

- Notwithstanding NMH's conservative, low-risk investment profile in which NMH sought liquidity and principal preservation, JPM purchased securities for NMH's

---

[3]    *See Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (2d Dep't 2007) (listing elements of breach of fiduciary duty); *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001) (listing elements of negligence and gross negligence under New York law).

4

account that were particularly volatile and at a high risk of illiquidity (*Id.* ¶¶4, 6, 38, 74).

- As the housing market worsened—*i.e.*, *after* it was already widely reported that the mortgage market was crashing and *after* JP Morgan itself acknowledged that "liquidity in the subprime sector had evaporated"—JPM purchased securities for NMH's Account that were directly and/or indirectly tied to the subprime mortgage market (*id.* ¶¶8, 58, 60).   JPM compounded the problem by failing to sell those securities, even as the market bottomed out (*id.* ¶¶10, 67).

- In fact, JPM purchased or maintained Securities for NMH's account even though the supplemental prospectuses for several of those Securities recognized the extraordinary risk presented by the market for those particular securities. Notwithstanding these risks, and in violation of its ongoing obligation to monitor the Securities, JPM continued to hold those risky Securities in JPM's Account. For example:

  o The supplemental prospectus for SER 2007-AHL2 CL A3A, filed on the same day that JPM purchased the Security, warned, in bold, that "**recent developments in the residential mortgage market may adversely affect the market value of your securities.**"[4]   (Tendler Decl. ¶3, Ex. B (emphasis in original).)

  o The supplemental prospectus for Merrill Lynch First Franklin Mgt Ln 2007-3CL A2B warned, under "Risk Factors", that "Investors should note that the residential mortgage market in the United States has recently encountered a variety of difficulties and changed economic conditions that may adversely affect the performance or market value of your certificates. **In recent months, delinquencies and losses with respect to residential mortgage loans generally have increased and may continue to increase, particularly in the subprime sector.**"   (Tendler Decl. ¶4, Ex. C (emphasis added).)   JPM nevertheless decided to hold the Security in NMH's Account.

  o The supplemental prospectus for Equifirst Loan Securitization Trust for the Account warned:  "Recently, the subprime mortgage loan market has experienced **increasing levels of delinquencies and defaults**, and we

---

[4]      The prospectuses and other Account-related documents attached as exhibits to the Tendler Decl. may be considered because they are presumably in JPM's possession and are appropriate for the Court's judicial notice.  (*See* JPM Brief at 3 n.1 (citing authority).)  Further, the Prospectuses provide specific details about the securities identified in the Complaint on Exhibit 1 (for example, whether a particular security was an ABS-HEL).  *See e.g., Univest Network, LLC v. AT&T Corp.*, No. 04 Civ. 9868 (MGC), 2006 WL 1017679, at *1 (S.D.N.Y. April 19, 2006) (considering prospectus that was not attached to the complaint because "plaintiff has reli[ed] on the terms and effect of a document in drafting the complaint" and finding that the prospectus is "integral to the complaint" and may be considered "even if it is not formally incorporated by reference.") (internal quotations and citations omitted).

cannot assure you that this will not continue. . . . In light of the foregoing, **you should consider the heightened risks associated with investing in the offered certificates, and the risk that your investment in the offered certificates may perform worse than you anticipate**." (Tendler Decl. ¶5, Ex. D (emphasis added).)  JPM ignored those warnings and continued to hold the Equifirst Trust in NMH's Account.

- JPM's purchase of the Securities it chose, and subsequent decision not to sell those Securities when the prospectuses themselves warned of the high risk, reflected a complete lack of prudence, diligence and analysis. (*See* Compl. ¶¶45-52; *see also* Tendler Decl. ¶¶3-5, Exs. B-D.)

- JPM's investment of more than half of NMH's funds in the actively managed portion of the Account in Subprime-Linked Securities was a glaring failure to diversify the Account and was inconsistent with NMH's principal stability objective. (Compl. ¶50.)

- In defiance of its fiduciary obligation to keep NMH informed about the Securities in the Account and its obligation to explain the practical impact and potential risks of its course of dealing, (*see infra* at 9), JPM refused to provide information about the Securities in the Account when NMH, its client and fiduciary, requested detail about the Portfolio's holdings. (*See* Compl. ¶¶15, 109, 111-114.)

Any of these allegations—alone or together—are sufficient to form the basis of a claim that JPM acted negligently, grossly negligent and in breach of its fiduciary duties to NMH.[5]

### 2.    The Same Allegations Can Support Both NMH's Tort And Contract Claims.

Rather than confront the allegations in the Complaint, JPM claims that the Court need not address those allegations on their merits because they are duplicative of the contract claim.  JPM's argument that the breach of fiduciary duty and negligence claims should be dismissed because they are based on the same conduct that may give rise to a breach of contract claim does not withstand scrutiny because JPM's contractual duty is separate and distinct from its fiduciary duty.  *See Bender Ins. Agency, Inc. v. Treiber Ins.*

---

[5]        The Complaint alleges that the remaining elements of NMH's tort claims are satisfied.  (*See e.g.,* ¶¶1-16, 22-115, 129-135, 194-207.)

*Agency, Inc*., 729 N.Y.S.2d 142, 145 (2nd Dep't 2001); *see also Mandelblatt v. Devon Stores, Inc*., 521 N.Y.S.2d 672, 676 (1st Dep't 1987) ("It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a [fiduciary] duty arising out of the relationship created by contract but which is independent of the contract itself." ); *see also Fanta v. Muriel Siebert & Co., Inc.*, No. 114837/06 (EJB), 2008 WL 3521334, *3 n.1 (N.Y. Sup. Ct. Jul. 11, 2008) (refusing to dismiss negligence and contract claims as duplicative and finding that the same conduct, at least at the pleading stage, may constitute both a breach of contract and a breach of a fiduciary duty).

Indeed, it is well-settled under New York law that tort claims are not duplicative of contract claims where a duty of care exists outside the contract. *See e.g., Bullmore v. Ernst & Young Cayman Is.,* 846 N.Y.S.2d 145, 148 (1st Dep't 2007); *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 896 N.E.2d 61, 68 (N.Y. 2008). Thus, "[p]rofessionals such as ***investment advisors***, who owe fiduciary duties to their clients, 'may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties', since in 'these instances, it is policy, not the parties' contract, that gives rise to a duty of care.'" *Bullmore*, 846 N.Y.S.2d at 148 (quoting *Sommer v. Fed. Signal Corp.,* 593 N.E.2d 1365, 1369 (1992) (emphasis added)).[6]

---

[6]    *See also Andersen v. Weinroth*, 849 N.Y.S.2d 210, 222 (1st Dep't 2007) ("[Defendant]'s liability with respect to [certain investments] arose not only out of his status as a contracting party [to the partnership agreement], but in connection with the fiduciary duty he undisputedly owed to [his partners]. Accordingly, the tort claims can co-exist with the contract claims."); *Rodin Props.-Shore Mall, N.V. v. Ullman*, 694 N.Y.S.2d 374, 376 (1st Dep't 1999) ("As a professional appraiser, [Defendant] owed a duty to plaintiff [investors relying on proper valuation of property in obtaining financing] independent of any contractual obligation . . . In such circumstances . . . the fact that the same facts serve as the basis of both the [negligence] and contract claims is of no moment. '[L]iability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligations'".) (internal quotations omitted); *Dayan v. Witkoff*, No. 109234/08 (RBL), 2009 WL 994791 (N.Y. Sup. Ct. Apr. 6, 2009) (a defendant "may be liable based upon the existence of the alleged joint venture [which

This fundamental principle was recently affirmed in *Assured*, a case on which JPM relies throughout its submission and which it claims is "substantively identical" (JPM Br. at 9) to the case here.  As JPM acknowledges in a footnote, the *Assured* Court rejected JPM's argument and refused to dismiss plaintiff's tort claims as duplicative.[7] (JPM Br. at 15 n. 9.)

Moreover, JPM's argument that the contract governs the full extent of the parties' relationship (*id.* at 11) is patently wrong.  A duty may be "considered independent of the contract even if it arises out of the relationship that the contract created."  *Consol. Risk. Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871 (FJS) 2007 WL 951565, *2 (N.D.N.Y. Mar. 27, 2007) (citations omitted).  JPM owed NMH duties based on the investment relationship itself, irrespective of whether those obligations were stated in the contract.  Fiduciary duties attach where, as here, an investor affords a bank full and complete discretionary authority to manage its investments.  *See Dimsey v. Bank of New York*, No. 600391/2006 (KJM), 2006 WL 3740349, *2 (N.Y. Sup. Ct. Aug. 24, 2006); *see also Drain v. Paragon Capital Mgmt. Corp.*, No. 22454-2006 (EJP), 2007 WL 2161904, *5 (N.Y. Sup. Ct. Jul. 3, 2007) (what "creates the fiduciary duty is the disparity of power, which causes the [investor] to place reliance on the expertise and broad authority of the

---

gives rise to fiduciary duties between the parties], and also, separately, based upon duties created by terms of the Non-Disclosure Agreement") (relying on *Bullmore*, 846 N.Y.S.2d at 145).

[7]      JPM claims that the First Department's holding in *Assured* was "without explanation" and then goes on to surmise that it "stands to reason" that "*Assured*'s tort claims survived because the contract claim in that case was limited" to an issue not relevant to NMH's claims here.  (JPM Br. at 15 n. 9.)  JPM's "reasoning" is flawed.  The *Assured* court, in holding that the tort claims were not duplicative, cited three cases: *Sommer,* 593 N.E.2d at 1369, *Bullmore*, 846 N.Y.S.2d at 148, and *Rodin*, 694 N.Y.S.2d at 376.  Each of those cases stand for the proposition urged by NMH here, namely that tort claims are not duplicative of contract claims where a duty of care exists outside the contract.  *Assured*, at *9.  Thus, the far more compelling basis for the *Assured* court's holding is that the claims were not duplicative because JPM owed the *Assured* plaintiffs a duty of care separate and apart from the contract.

[investment manager]").[8]  As one Court explained:

> "Unlike the broker who handles a non-discretionary account, the broker handling a discretionary account becomes the fiduciary of his customer in a broad sense. Such a broker, while not needing prior authorization for each transaction, must (1) manage the account in a manner directly comporting with the needs and objectives of the customer as stated in the authorization papers or as apparent from the customer's investment and trading history; (2) keep informed regarding the changes in the market which affect his customer's interest and act responsively to protect those interests; [citation omitted] (3) keep his customer informed as to each completed transaction; and [(4)] explain forthrightly the practical impact and potential risks of the course of dealing in which the broker is engaged."

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 953 (E.D. Mich. 1978), *affirmed*, 647 F.2d 165 (6th Cir. 1981) (internal citations omitted).

Thus, where, as here, the plaintiff sufficiently pleads a duty separate from that imposed by the contract, that plaintiff can maintain other tort claims.  *Consol. Risk Serv.,* 2007 WL 951565, at *2 (citing *Sergeants Benevolent Assoc. Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 80 (1st Dep't 2005)).  Courts have repeatedly applied this principle in similar circumstances and have refused to dismiss plaintiffs' tort claims against investment professionals as duplicative of their contract claims.[9]

---

[8]    Likewise, banks such as JP Morgan owe a duty to their customers to conduct their business with reasonable skill and care.  Accordingly, an investment advisor has an extra-contractual duty with respect to its client's funds.  *See King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997); *Gorham-Dimaggio v. Countrywide Home Loans, Inc.,* 592 F. Supp. 2d 283, 298 (N.D.N.Y. 2008); *Bank of Am., N.A., v. Hensley Props., L.P.*, No. 2:07-CV-1584 (GEB), 2007 WL 4591453, *4 (E.D. Cal. Dec. 28, 2007).  This duty generally requires an investment adviser to determine that the investment advice it gives to a client is suitable for the client, taking into consideration "the client's financial situation, investment experience, and investment objectives."   Suitability of Inv. Advice Provided by Inv. Advisers; Custodial Account Statements for Certain Advisory Clients, Inv. Advisers Act Release No. IA-1406, 56 S.E.C. Docket 724 (Mar. 16, 1994); *see also* STANDARDS OF PRACTICE HANDBOOK 71 (Tenth) (CFA Inst. 2010) ("The manager in these situations should ensure that the client's objectives and expectations for the performance of the account are realistic and suitable to the client's circumstances and that the risks involved are appropriate.").

[9]    In *Sommer*, on which JPM relies, (JPM Br. at 19, 20), the court recognized that "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract" and that professionals "may be subject to tort liability for failure to

For example, in *Dimsey,* the plaintiff alleged that the bank failed to follow the terms of the management agreement (which authorized the bank to act in a discretionary capacity), and sued the bank for, among other things, breach of contract and breach of fiduciary duty. 2006 WL 3740349, at *1-3. The bank argued, as JPM does here, that the plaintiff could not bring its breach of fiduciary duty claim unless it was based on conduct independent of the conduct underlying the contract claim. *Id*. at *3. The Court denied the bank's motion to dismiss and recognized that "at this pre-discovery phase of the proceedings, [plaintiff] may plead alternative theories". *Id*. Dismissal here would be similarly premature.

Likewise, in *Bullmore*, the defendant investment managers were vested with complete discretionary authority over the plaintiff fund's portfolio pursuant to an investment management agreement. 846 N.Y.S.2d at 147. On appeal from the grant of defendants' motion to dismiss the breach of fiduciary duty claim as duplicative of the breach of contract claim, plaintiffs argued that the investment managers had "an independent fiduciary obligation to exercise due care and diligence in the administration of the fund and to ensure that they did not engage in any fraudulent or unsound investment practices." *Id.* at 148. The First Department agreed and explained that investment advisors owe fiduciary duties to their clients "irrespective of their contractual duties" because, in such instances, it is "policy [and] not the parties' contract, that gives rise to a duty of due care". *Id.* (quoting *Sommer*, 593 N.E.2d at 1369) (internal quotations omitted).[10]

_____

exercise reasonable care, irrespective of their contractual duties." 593 N.E.2d at 1369 (internal quotations omitted).

[10]     Defendants' reliance on *Robin Bay Assocs., LLC v. Merrill Lynch & Co*., No. 07 Civ. 376 (JMB), 2008 WL 2275902 (S.D.N.Y. June 3, 2008), *Alitalia Linee Aeree Italiane S.p.A. v. Airline Tariff Pub. Co.*,

Because JPM owed NMH extra-contractual duties that permit tort causes of action to exist alongside the breach of contract claim, and for which JPM may be separately liable, dismissal based on duplicativeness is not warranted.

### 3. The Factual Allegations Supporting NMH's Tort Claims Are Different From Those Supporting Its Contract Claim.

Even if NMH's tort claims were required to be predicated on separate facts from those underlying the breach of contract claim (and they are not), NMH's claims would satisfy that standard. JPM's characterization of the claims as a "complete overlap" (JPM Br. at 12) is not supported by the Complaint. As such, *CMMF* is not on point because the *CMMF* plaintiff's tort claims, unlike NMH's claims here, were predicated on conduct that was arguably addressed by the contract.

In addition to the JPM's purchase of long-term maturities for the Account discussed above, *supra* p. 4,[11] JPM's refusal to provide NMH with information about the

---

580 F. Supp. 2d 285 (S.D.N.Y. 2008) and *Kassover v. Prism Venture Partners, LLC*, 862 N.Y.S.2d 493 (1st Dep't 2008) (JPM Br. 12-13, 15-16) is misplaced. In each of those cases, the contracts between the parties did not give rise to any special relationship or fiduciary duties. *See Robin Bay*, 2008 WL 2275902 at *4; *Alitalia*, 580 F .Supp. 2d at 293; *Kassover*, 862 N.Y.S.2d at 498. The Third Department's decision in *Brooks v. Key Trust Co. Nat'l Assoc.*, 809 N.Y.S.2d 270, 273 (3d Dep't 2006), on which JPM relies, is also unavailing. Although the financial advisor in *Brooks* had discretionary authority over the account, the Court in *Brooks* also noted that the parties' relationships involved allegations of improper loans extended by the defendants, which rendered the relationships commercial as well. *Id.* Here, by contrast, JPM had discretionary authority, and the "higher trust" attaching to that authority gave rise to fiduciary duties that were distinct from the parties' agreement.

Further, to the extent the *Brooks* court found that a plaintiff could not assert a fiduciary duty claim against a financial advisor with discretionary authority to manage plaintiff's investment accounts where the tort allegations involved the same conduct which gave rise to a contract claim, *Brooks* is at odds with First Department authority. For example, in *Mandelblatt*, the First Department reversed the dismissal of a counterclaim for breach of fiduciary duty. In doing so, it recognized the "well settled" principle of New York law "that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." 521 N.Y.S.2d.at 676; *see also Bullmore*, 846 N.Y.S. 2d at 148; *Andersen*, 849 N.Y.S.2d at 222; *Rodin*, 694 N.Y.S.2d at 376. JPM's reliance on *CMMF* as support for its argument that NMH's tort claims are duplicative of its contract claim is similarly in error.

[11] NMH has also alleged that JPM breached its fiduciary duty by filling the Account with long-term securities that were at a high risk of illiquidity. JPM's investment in long-term, illiquid securities was not consistent with its fiduciary duties as a discretionary account manager to "manage the account in a manner directly comporting with the needs and objectives of the customer" and to "keep informed regarding the

Securities in the Account, although not a breach of any express contractual obligation, was a violation of JPM's fiduciary duties. *See Leib*, 461 F. Supp. at 953. The Complaint alleges that JPM refused to provide NMH with security-specific information that it requested, only provided NMH with a Bloomberg printout that just gave a general sketch of the Securities in the Account, and then refused to explain the Bloomberg information to NMH. (Compl. ¶¶15, 109-114.) JPM's conduct violated its duty to "keep [its] customer informed as to each completed transaction". *See Leib*, 461 F. Supp. at 953.

To the extent it is even required under New York law, the Complaint has alleged conduct supporting NMH's tort claims that does not overlap with conduct supporting NMH's contract claim. Accordingly, dismissal is not appropriate.

4.   <u>NMH's Tort Claims Against Mr. Brown Cannot Be Dismissed As Duplicative Because NMH Has Not Asserted A Contract Claim Against Him.</u>

As to Mr. Brown individually, NMH's tort claims cannot be duplicative because NMH has pleaded its breach of contract action solely against JPM, not Mr. Brown. *See Richbell v. Jupiter Partners*, 765 N.Y.S.2d 575, 589 (1st Dep't 2003) (holding that "a fraud claim may be dismissed *as duplicative* only as against a defendant against whom the related contract claim is viable") (emphasis in original). Further, as discussed above, *supra* p. 7-11, JPM's argument that NMH "cannot pursue tort claims based on the same conduct that underlies its breach of contract claim" (JPM Br. at 18) is not supported by

---

changes in the market which affect his customer's interest and act responsively to protect those interests". *See Leib*, 461 F. Supp. at 953. Notably, JPM has previously argued that there was no **contractual** limit on the maturity dates of the investments in the Account and no explicit liquidity requirement, and so has conceded that NMH's allegation is non-contractual and thus must be fiduciary in nature. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, dated Nov. 11, 2008, at 5. Although NMH has not conceded that liquidity and maturity limits were outside the terms of the contract, this proves the flaw in JPM's own logic.

New York law.[13]

> 5. Dismissal Of The Contract Claim Does Not Mandate Dismissal Of The Tort Claims.

JPM's argument that NMH's tort claims should be dismissed as duplicative, even if the Court determines that the Complaint does not allege a breach of a contractual duty, is wrong. As discussed above, *supra* p. 6, JPM owed NMH duties that were separate and distinct from the contract. Even if the Court determines that the Complaint does not allege a breach of a contractual duty, it nevertheless should find that the Complaint sufficiently alleges that JPM breached its duties arising from its investment advisor relationship with NMH. Further, the tort claims can only be dismissed as duplicative when there is a viable contract claim. *See Richbell*, 765 N.Y.S.2d 575 at 589.

JPM relies principally on *Guerrand Hermes v. J.P. Morgan & Co., Inc.*, 769 N.Y.S.2d 240, 243 (App. Div. 2003), and claims that the court there dismissed plaintiff's breach of contract claim and "upheld the dismissal of the plaintiff's negligence claim as duplicative". (JPM Br. at 17.) That is not, however, what happened. The *Guerrand* court dismissed the negligence claim on the merits for the same reasons that it dismissed the other claims, not because the claim was duplicative.[14]  *See* 769 N.Y.S.2d at 243. Each of the remaining cases to which JPM points in support of its argument that "courts regularly dismiss tort claims as duplicative, even if the contract claim is also dismissed" (JPM Br. at 16) are distinguishable. None of those cases involved a fiduciary

---

[13]    Although the *CMMF* court dismissed claims against an individual, it did not specifically address the claims against the individual in its initial discussion, and in denying a motion to reargue that point, the court simply provided that its prior decision applied to the individual, without citation to, or analysis of, any authority on this point.

[14]    Further, *Guerrand* involved both a discretionary account (which gives rise to a fiduciary relationship) and a non-discretionary account (which does not), and it is unclear based on the decision whether plaintiff's negligence claim arose from JPM's management of the discretionary or non-discretionary account. 769 N.Y.S.2d at 241-243.

relationship, such as between a professional and his client, which would give rise to duties of care distinct from those duties contained in the contract.[15]

### 6.   Plaintiff Is Permitted To Plead Alternative Theories.

Even if the Court were to find NMH's tort claims duplicative of its contract claim, dismissal is not appropriate at this stage because a plaintiff is permitted to plead alternative theories of liability.  The Federal Rules of Civil Procedure explicitly permit Plaintiff to assert claims in the alternative.  *See* Fed. R. Civ. P. 8(d)(2).  Where allegations are not specifically denominated as alternative claims "[Rule 8(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss".  *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999); *see also St. John's Univ. v. Bolton*, --- F. Supp. 2d ---, 2010 WL 5093347, *30-31 (E.D.N.Y. Dec. 10, 2010) (refusing to dismiss unjust enrichment claim as duplicative of breach of contract claim at the pleading stage).

Indeed, in *JP Morgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009), JPM successfully advocated the very same position NMH advocates here:  that dismissal for duplication is appropriate (if at all) only where the bases for the two claims are "identical" and that, under liberal pleading standards, it is reasonable to infer that the tort claims are "'based, at least in

---

[15]      *See Stella Flour & Feed Corp. v. Nat'l City Bank of New York*, 136 N.Y.S.2d 139, 142 (1st Dep't 1954) (debtor-creditor relationship); *Alitalia*, 580 F. Supp. 2d  at 286-7 (dispute between an airline and a company that publishes airfare rates); *Unclaimed Prop. Recovery Serv., Inc.*, 870 N.Y.S.2d 361, 362 (1st Dep't 2009) (fee dispute arising from a commercial contract between UBS and company); *Celle v. Barclays Bank P.L.C.*, 851 N.Y.S.2d 500, 501 (1st Dep't 2008) (broker for **non**-discretionary account expressly did not owe fiduciary duty to his client); *Altman v. N.Y. Bd. of Trade, Inc.*, 860 N.Y.S.2d 94, 95 (1st Dep't 2008) (holder of trading permits sued NY Board of Trade); *Foster v. Kovner*, 840 N.Y.S.2d 328, 334 (1st Dep't 2007) (no fiduciary relationship in dispute between partners over an arms-length commercial transaction).

part, on facts other than those alleged in the breach of contract claim[s].'" *Id.* at *12 (citation omitted).  As JPM argued in that case, the duplicative argument "must fail" because "JPMorgan is entitled to plead in the alternative"; "the two claims rest upon distinct allegations"; "it is entirely appropriate for there to be some overlap in the factual predicate between JPMorgan's claims for breach of contract and fiduciary duty"; and it is "possible that the Court could ultimately determine that, although the agreements themselves were not breached, [the defendant] owed JPMorgan a fiduciary duty and that it in fact breached that duty".  (*See* Tendler Decl. ¶6, Ex. E.)  NMH should receive the benefit of the same pleading leeway for which JPM successfully argued in *IDW*.

### B.  JPM Cannot Hide Behind An Exculpatory Clause.

Defendants' attempt to rely on a limitation of liability clause to evade responsibility for their negligence must fail because (1) they materially breached the agreement that they are now seeking to enforce, and (2) they are fiduciaries of NMH and manage the Account on a discretionary basis.[16]  (*See* Compl. ¶¶122-130.)

Because a party that materially breaches a contract cannot benefit from that contract's terms, dismissal of NMH's negligence claim prior to a determination of whether JPM breached the contract would be premature.  *See Malik v. Toss 29, Inc*., No. SP 135/07 (SJF), 2007 WL 926297, *4 (N.Y. Dist. Ct. Mar. 29, 2007) ("The Court of Appeals has held that a breaching party waives its right to enforce a contractual provision in its (his/her) favor when that party is responsible for the breach" (citing *Cornell v. T.V. Dev. Corp*., 215 N.E.2d 349 (N.Y. 1966)); *Shernoff v. Schimel*, 112 N.Y.S.2d 333, 348

---

[16]     JPM only makes this argument with respect to NMH's negligence claim because the exculpatory clause does not exempt JPM from liability for acts involving gross negligence.  Thus the only claim for which the exculpatory clause could potentially even warrant dismissal is the negligence claim, ***not*** the gross negligence or breach of fiduciary duty claims.  *See Assured*, at **9-10.

(Sup. Ct. 1952) (breaching party cannot enforce alleged rights) (citation omitted).  Here, NMH alleges that JPM materially breached the agreement containing the exculpatory clause.  (*See* Compl. ¶¶122-127.)

In addition, the exculpatory clause does not shield JPM from liability because JPM agreed to manage the Account on a discretionary basis.  (Compl. ¶¶5, 130.)  In New York, "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence" and although those provisions can be enforceable, they are "subject to close judicial scrutiny".  *Gross v. Sweet*, 400 N.E.2d 306, 308-09 (N.Y. 1979).  Even "an agreement that clearly and unambiguously attempts to exempt a party only from liability for ordinary negligence" will not be enforced if it violates public policy or because it constitutes an abuse of a special relationship, or both.  *See Ash v. New York Univ. Dental Ctr.*, 564 N.Y.S.2d 308, 310 (1st Dep't 1990).  Where, as here, the party seeking exculpation is a fiduciary providing a professional service on a discretionary basis, in a highly regulated industry, particular public policy concerns are raised.  Indeed, in the context of a professional relationship, "a provision avoiding liability is peculiarly obnoxious".  *Ash*, 564 N.Y.S.2d at 311 (quoting 15 Williston on Contracts [3rd ed. 1972] § 1751); *see also In re Allegheny Int'l, Inc*., 100 B.R. 244, 247 (W.D. Pa. 1989) ("holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries.").[17]

---

[17]     The cases on which JPM relies in arguing that the exculpatory clause is enforceable to bar NMH's negligence at this stage are procedurally and factually distinguishable.  *See Trumball Investments, LTD v. Wachovia Bank*, No. 1:05cv15 (GBL), 2005 WL 6148880, *5 (E.D.Va. Apr. 15, 2005) (where breach of contract cause of action was supported only by a purported failure to follow oral instructions which the court found the defendant was not obligated to follow); *Piercy v. Citibank, N.A.*, 424 N.Y.S.2d 76, 77 (Sup. Ct. 1978) (a 33 year old decision that affirmed, without analysis or reasoning, an opinion addressing exculpatory clause in dicta); *Metropolitan Life Ins. Co. v. Noble Lowndes Intern., Inc.,* 84 N.Y.2d 430, 434-435 (N.Y. 1994) (after trial and with no fiduciary or special relationship between the contracting parties); *Sommer v. Fed. Signal Corp.,* 593 N.E.2d 1365, 1367-69 (decision after summary judgment).

In any event, issues relating to the exculpatory clause are not appropriate for determination on this motion to dismiss. In determining whether a party can insulate itself from liability arising from its own negligence, the Court should consider not only the agreement itself but also the "surrounding facts and circumstances". *See Williams v. J.P. Morgan & Co. Inc*., 248 F. Supp. 2d 320, 326 (S.D.N.Y. 2003). Those facts and circumstances—for example, whether JPM breached the agreement at issue and whether JPM abused its position as a fiduciary by including the exculpatory provision—cannot be conclusively determined without the benefit of discovery. *See In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534, 543 (S.D.N.Y. 2007) (finding it would be premature to deal with "issues relating to the so-called 'Exculpatory Clause' in the Investment Advisory Agreement" until after discovery).

## II.   NMH HAS PROPERLY PLED A BREACH OF CONTRACT CLAIM.

### A.  The Complaint Complies With Rule 8's Notice Pleading Requirement.

It is undisputed that Count One fully and adequately states a claim for breach of contract in that it competently alleges each of the required elements. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 245-46 (2d Cir. 2000) and Compl. ¶¶122-127. At this stage, that should end the Court's inquiry. The Complaint "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests". *Bell Atl. Corp.,* 550 U.S. at 555 (quotations omitted). "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a) (2). *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). NMH's Complaint provides JPM fair notice of its claims, satisfies Rule 8, and accordingly, JPM's motion for a judgment at this stage should be denied.

**B.  JPM Breached Numerous Provisions Of The Parties' Agreement.**

JPM argues that there was no breach of contract for two reasons.  *First*, JPM attacks a straw man, claiming that NMH's cause of action is premised on JPM's failure to achieve the investment objectives set forth in the parties' agreement.  (JPM Br. at 8.) That, however, is not the basis of NMH's contract claim.  Among other things, JPM failed to follow the agreed-upon investment strategy and failed to conduct the analysis and diligence that it had promised to conduct, and accordingly, could not be in compliance with the contract whether or not the investment objectives had been achieved. (Compl. ¶¶22-35, 38, 47, 80, 83, 115, 122-127.)  *Second*, JPM hides behind its alleged compliance with just one of its obligations under the agreement—namely, to invest in accordance with certain concentration limits.  (JPM Br. at 8-9.)  Regardless, JPM's satisfaction of one aspect of the agreement would not excuse its failure to perform its other contractual obligations, including the obligation to analyze the securities and evaluate the risk of the investments prior to purchase.

1.  JPM Failed To Fulfill Its Obligations Under The Contract.

JPM's entire argument in support of its motion for judgment on the pleadings rests on its inaccurate characterization of NMH's allegations as a hindsight complaint that JPM failed to meet the investment objectives set forth in the agreement.  (JPM Br. at 8.) That is not what the Complaint alleges.  Rather, NMH's breach of contract claim rests on JPM's complete failure to follow the agreed-upon investment strategy and JPM's wholesale abdication of its management obligations that were set forth in the contract.[18]

---

[18]        The relevant contract is not limited (as JPM suggests) to only the Discretionary Portfolio Mandate and the Investment Guidelines.  Those documents required JPM to follow the "Enhanced Cash" Strategy, but never define what the "Enhanced Cash Strategy" entailed and thus the Court must look to other contemporaneous documents, such as JPM's description of the so-called "Enhanced Cash" Strategy (Rosen

(*See e.g.*, Compl. ¶¶7-10, 38-43, 50-54, 60-68, 72, 116-117, 120-127, 131.)

The Complaint alleges that JPM invested the Account in a way that was entirely contrary to the agreed-upon investment strategy.  (*See e.g.*, *id.* ¶¶7, 47, 49, 50, 52, 54, 55, 60, 62, 65, 120.)  The parties' agreement required JPM to "[p]rovide a high level of current income consistent with the preservation of principal" and identified the risk profile as "conservative".  (*See Id.* ¶29; Rosen Decl. ¶3, Ex. B.)  Courts have ruled that similar contractual requirements for conservatism and prudence give rise to enforceable obligations.  *See Scalp & Blade v. Advest*, 722 N.Y.S.2d 639, 640 (4th Dep't 2001) (upholding claim that investment advisor "breached an agreement . . . to provide reasonable and competent investment advice and brokerage services suited to plaintiff's investment objectives); *see also Sergeants Benevolent Assoc. Annuity Fund v. Renck,* No. 601735/03 (HJC), 2004 WL 5278824, **3, 8 (N.Y. Sup. Mar. 31, 2004), *rev'd on other grounds*, 796 N.Y.S.2d 77 (2005); *cf. DeLeonardis v. Berg*, No. 97 CV 1655 (NG), 1998 WL 760338, *4 (E.D.N.Y. Sept. 15, 1998) (denying motion to dismiss where, *inter alia*, investment manager violated promise to make "'conservative' investments").

In addition to JPM's failure to follow the agreed-upon investment strategy, the Complaint describes other ways in which JPM breached the contract.  For example, within each category of assets listed in the Sector Guidelines, JPM had an obligation to select the "most attractive securities".  (Compl. ¶30.)  As detailed in the Complaint, securities backed by Alt-A mortgages are substantially riskier than those backed by prime mortgages because Alt-A mortgages are at a higher risk of default.  (*Id.* ¶41.)  By purchasing CMOs backed by Alt-A mortgages, rather than prime mortgages, JPM

Decl. ¶2, Ex. A) and the Sample Portfolio (Tendler Decl. ¶8, Ex. G) which JPM provided to NMH.

breached its obligation to select the most attractive securities within the broader category of "Mortgage Securities".

As another example, NMH alleges that JPM breached the parties' agreement by loading the Portfolio with Securities that had maturities of ***more than a decade*** (and in some cases as much as 40 years in the future). These long-term Securities—dubbed "perpetuals" by JPM professionals—violated the parties' agreement, which specifically contemplated that the Securities purchased for the Account would be "short-term" and would mature "modestly outside of the money market fund universe (usually between 13 and 24 months)." (Compl. ¶¶4, 83-84, 138.) Investment in short-term securities was a hallmark trait of the agreed-upon investment strategy, and JPM touted the short-term nature of the strategy in a sample portfolio it provided to NMH at the time the Account was opened. (*Id*. ¶¶23, 26, 31-32; Tendler Decl. ¶8, Ex. G.) JPM's failure in this regard is a clear departure from the parties' agreement and is the same type of misconduct that was the basis of the SEC's action against Charles Schwab (*see supra* p. 4).

The Complaint also alleges that JPM breached its obligations to (i) conduct "inten[se] top-down and bottom-up analysis" on the securities it purchased for the Account, (ii) to "actively manage the Portfolio to . . . control risk", and (iii) to "determine and modify strategic and tactical asset allocation . . . given changing fundamentals". (Compl. ¶¶24, 30; *see also* Rosen Decl. ¶¶2-3, Exs. A-B.) JPM's failure is evidenced by (among other things) the fact that ***at the time of purchase and thereafter***, it was fully disclosed to JPM in some of the Securities' prospectuses that as a result of the declining housing market, those Securities were subject to extraordinary risk. (*See* Tendler Decl. ¶¶3-5, Exs. B-D.) By purchasing Securities that expressly warned JPM of those

Securities' connection to the deteriorating subprime market and continuing to hold them even after subsequent disclosures about their increasing risk, JPM breached its specific contractual obligations to evaluate and analyze carefully the investments it made. Likewise, JPM failed to actively manage the Portfolio to control risk and failed to conduct the requisite analysis by continuing to buy (and failing to sell) Subprime-Linked Securities when it was already widely reported that the housing market was collapsing. (Compl. ¶¶9-10, 51-65, 66-72, 116-117, 131.)

In sum, contrary to JPM's argument, NMH's claims do not rest on a hindsight objection to an otherwise authorized exercise of discretionary investment authority, but instead rest on allegations that JPM failed to live up to its contractual obligations.

*Sergeants Benevolent* is instructive.  There, the plaintiff alleged that the defendant investment advisors "deviated from the Fund's asset allocation model and investment policy" by failing to rebalance a fund more heavily weighted with volatile equities than contemplated under the allocation model and investment policy.  2004 WL 5278824, at **3, 8.  The defendant advisors made no attempt to dismiss the breach of contract claim arising under this allegation.  *Id.* at **2-3.  Similarly, NMH alleges that JPM failed to follow the agreed-upon investment strategy—the touchstone of which was short-term, low-risk securities—by loading the Portfolio with long-term Subprime-Linked Securities amidst a crashing market and then failing to sell those Securities when it was clear their value would continue to be impaired.  (*See e.g.*, Compl. ¶¶45-72.)[19]

---

[19]     The cases previously decided by this Court to which JPM cites are inapposite.  *Charter Township of Clinton Police and Fire Retirement System v. KKR Fin. Holdings LLC,* No. 09 Civ. 7062 (PAC), 2010 WL 4642554, **15, 19 (S.D.N.Y. Nov. 17, 2010) and *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2011 WL 31548, **8-9 (S.D.N.Y. Jan. 5, 2011) both involved securities fraud claims, which were dismissed because the Court found that there was no duty to disclose the purported omissions and/or that those omissions were not material.  Likewise, *St. Vincent Catholic Medical Centers v. Morgan Stanley*

2. <u>JPM's Purported Compliance With The Concentration Limits Does Not Excuse JPM's Other Breaches.</u>

JPM argues that because the type and quantity of Securities purchased were contemplated by the contract (*i.e.*, concentration limits), it cannot be in breach. (JPM Br. at 7-8.) But JPM does not point to any language in the agreement (nor can it) providing that mere compliance with the concentration limits discharged all of JPM's other obligations delineated elsewhere in the contract.

In any event, whether JPM even complied with the concentration limits is a factual question on which there is no evidence at this time one way or the other, although based on the available evidence it is possible that JPM violated the concentration limits at various times.[20] JPM also has not submitted evidence that shows it was compliant and NMH is not obligated to do so at this point.[21] *See* Fed. R. Civ. P. 8. Because there is a

---

*Inv. Mgmt. Inc.,* No. 09 Civ. 9730 (PKC), 2010 WL 4007224, *4 (S.D.N.Y. Oct. 4, 2010), has no applicability here. There, the Court dismissed claims against an investment manager where there were "no allegations of inadequacy of [the manager's] investigation of the merits of its investments". The gravamen of the Complaint in this case, by contrast, is precisely that JPM inadequately investigated the merits of the investments it made for NMH. (Compl. ¶115.) Further, the *St. Vincent* plaintiff alleged that its investment advisor purchased mortgage backed securities for their account "on the eve of a national collapse in the subprime real-estate lending market". 2010 WL 4007224 at *1. Here, the Complaint alleges that JPM purchased and held the mortgage backed Securities for the Account ***during*** and ***after*** the national collapse of the subprime lending market. (Compl. ¶¶45-65.)

[20]     Although the account statements purport to reflect sector allocation, NMH does not have the necessary information to effectively evaluate whether the sector allocations reflected in the account statements are accurate or consistent with information in JPM's possession. For example, there were at least 19 periods in which JPM *could* have exceeded the concentration limits. (Tendler Decl. ¶7, Ex. F.) In those periods, the percentage of the Account that was invested in fixed income securities, rather than cash, was high enough such that if all or some significant part of the fixed income securities were properly categorized as "mortgaged backed", "corporate securities" or "asset backed securities", it is entirely plausible that JPM breached the concentration limits. (*See id.*) And although the 2008 account statement portfolio summaries purport to categorize the Securities as, for example, "Mortgage and Asset Backed Bonds" and "Government and Agency Bonds", there is not complete transparency as to the parameters JPM used for making such designations and on what basis a particular security was categorized, and the 2007 account statements did not have any such designation broken down as a percentage basis of the total Portfolio. (*Id.*) Thus, even assuming JPM's characterizations in 2008 as to "type" and "quantity" were accurate (which is not an inference properly drawn on a motion to dismiss) the 2007 statements provided even less information to NMH. Further, the categories as to type of security that JPM used in the account statements do not match the categories in the concentration limits, so there is no way to make the type of "apples to apples" comparison, even on the face of the documents in NMH's possession. (*See id.*)

[21]     NMH alleges that it requested information about each of the Securities in the Account and JPM

22

factual question as to whether JPM did, as it claims, purchase the "type" (JPM Br. at 1, 2, 7) and "quantity" (*id.* 11) of securities authorized by the Guidelines, the breach of contract claim should not be dismissed on that basis.  *See CMMF*, at 566.

NMH requested security-specific information that would have enabled it to evaluate, among other things, whether JPM had complied with the concentration limits. (Compl. ¶¶109, 111, 113-114.)   JPM cannot bootstrap its failure to provide that information—in breach of its fiduciary obligations (*see supra* p. 6)—into a valid basis for dismissal.  Accordingly, the Court should not dismiss NMH's breach of contract claim based on JPM's compliance with the agreement's concentration limits before it is even given the opportunity to assess evidence of that purported compliance.

Even if JPM could demonstrate compliance with the concentration limits, which it has not to date, JPM's argument that such compliance is the full extent of JPM's contractual obligations (JPM Br. at 7-9) is contrary to New York law.  A contract must be read to give effect to all of the terms.  *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("A reading of the contract should not render any portion meaningless.") (citation omitted); *CNR Healthcare Network, Inc. v. 86 Lefferts Corp.*, 874 N.Y.S.2d 174, 176-177 (2d Dep't 2009) (same).  Here, finding that the concentration limits superseded JPM's other obligations and limits on JPM's discretion would render all of those obligations and limits—such as the 13-24 month maturity range, the obligation to follow a "conservative" investment strategy, the duty to conduct "top-down and bottom-up analysis" and the requirement that JPM select the most attractive

---

refused to provide it.  (Compl. ¶¶109, 111-114.)  At the pleading stage, a fair inference drawn from that allegation is that the information JPM would have provided (and, the Complaint alleges, had a duty to disclose) would show that JPM violated various aspects of the agreement, including the concentration limits in the Typical Sector Ranges.

securities within each sector or class of securities—completely meaningless. In similar circumstances, courts have declined to find that compliance with discretionary investment mandates override general duties of prudence, including the duty to adjust the portfolio to meet changed circumstances. *See Rodney v. KPMG Peat Marwick*, 143 F.3d 1140, 1144-45 (8th Cir. 1998) (even if investment guidelines permitted certain investments, those investments could be actionable because of  undisclosed risk); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995) (fiduciaries may be liable for investing in company stock, even though required by ERISA plan, if such investment would be imprudent); *Lowen v. Tower Asset Mgmt.*, *Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) (investment manager had continuing duty to evaluate investments and to inform trustee if it disapproved of them, even if manager had been ordered to make such investments). Indeed, both the *CMMF* and *Assured* courts allowed plaintiffs' breach of contract claims to go forward to the extent those claims were based on a breach of a specific contractual provision. *See CMMF*, at *563; *Assured*, at *9.  Here, NMH has alleged sufficiently specific contractual breaches.[22]

---

[22]     *Guerrand* does not, as JPM suggests, stand for the proposition that compliance with concentration limits insulates a discretionary account manager from any claim for breach of contract. No such breach of contract claim was even advanced in *Guerrand*, where the alleged contractual breaches related to JP Morgan's handling of a non-discretionary account and JPM's failure to hedge a discretionary account where the contract did not require any hedging. The *Guerrand* plaintiffs' remaining claims, related to JP Morgan's asset allocation strategy for a different, discretionary account were not for breach of contract and were rejected—importantly, in the context of a motion for summary judgment and not on a motion to dismiss—for a variety of fact-specific reasons not alleged here, including that the *Guerrand* plaintiffs' discretionary account was specifically established for the purpose of investing in a portfolio consisting only of leveraged emerging market debt securities and the plaintiffs did not rely on JP Morgan to establish that strategy.  769 N.Y.S.2d  at 242-243.
      JPM's reliance on *Vladimir v. Cowperthwait*, 839 N.Y.S.2d 761, 763 (1st Dep't 2007) is also in error.  There, the court found that summary judgment was appropriate where discovery revealed that the investment manager followed the parties' disclosed and agreed-upon investment strategy and the only purported evidence of misconduct was the manager's failure to achieve what plaintiff expected.  Here, we are at the motion to dismiss stage and the well-pleaded Complaint details numerous ways in which JPM failed to follow the parties' agreement.  In dismissing certain aspects of plaintiffs' breach of contract claims, the *Assured* and *CMMF* courts relied solely on *Guerrand* and *Vladimir*.  NMH respectfully submits

24

**Conclusion**

For all of the foregoing reasons, JPM's Motion should be denied.  Further, if the Court dismisses any of NMH's claims, NMH respectfully requests leave to replead. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Ronzani v. Sanofi*, 899 F.2d 195, 198 (2d Cir. 1990); *see also* Fed. R. Civ. P. 15(a).  Because the Federal Rules favor resolving cases on their merits, courts should not "preclude the prosecution of a possibly meritorious claim because of defects in the pleadings."  *Ross v. A.H. Robins Co.*, 607 F.2d 545, 547 (2d Cir. 1979) (reversing dismissal with prejudice).  Here, NMH has not yet amended its Complaint, and JPM would not be prejudiced by any amendment should the Court dismiss additional claims. Thus NMH should be allowed to replead any dismissed claims.

Dated: February 4, 2011
        New York, New York

Respectfully submitted,

KOBRE & KIM LLP

By:      s/ Michael S. Kim

Michael S. Kim
(michael.kim@kobrekim.com)
Steven W. Perlstein
(steven.perlstein@kobrekim.com)
Carrie A. Tendler
(carrie.tendler@kobrekim.com)
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for NM Homes One, Inc.*

---

that for the reasons explained above, that reliance was in error.