UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NM HOMES ONE, INC.,

        Plaintiff,

v.

JP MORGAN CHASE BANK, N.A. and
TODD BROWN,

        Defendants.

---

08 CV 7679 (PAC)

ECF CASE

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019
212-373-3000 (Phone)
212-757-3990 (Fax)

*Attorneys for Defendants JP Morgan Chase Bank, N.A. and Todd Brown*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................................................1

Argument .......................................................................................................................................1

I.     PLAINTIFF CANNOT SUSTAIN ITS CLAIM FOR BREACH OF CONTRACT..................................................................................................................1

II.    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE................................................................................................................4

    A.   Independent Duties Do Not Insulate Plaintiff From the Prohibition on Pleading Contract Claims as Torts .......................................................4

    B.   Plaintiff's Arguments that the Dismissal of Its Contract Claim or the Presence of an Individual Defendant Can Rescue Its Duplicative Tort Claims from Dismissal Are Unavailing ..........................7

    C.   Plaintiff's Duplicative Tort Claims Are Not Alternative Theories of Liability and Are Barred as a Matter of Law ..........................................8

III.   PLAINTIFF'S NEGLIGENCE CLAIM IS INDEPENDENTLY BARRED BY THE LIMIT ON LIABILITY IN THE PARTIES' CONTRACT ....................9

Conclusion ...................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.*,
   896 N.E.2d 61 (N.Y. 2008) ............................................................................................... 5

*In re Allegheny Int'l, Inc.*,
   100 B.R. 244 (Bankr. W.D. Pa. 1989) ............................................................................. 10

*Ash v. New York Univ. Dental Ctr.*,
   564 N.Y.S.2d 308 (1st Dep't 1990) ................................................................................. 10

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
   2010 N.Y. Slip Op. 08644, 2010 WL 4721590 (1st Dep't Nov. 23, 2010) ................... 1, 2

*Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*,
   729 N.Y.S.2d 142 (2d Dep't 2001) ................................................................................... 5

*Brooks v. Key Trust Co. Nat'l Ass'n*,
   809 N.Y.S.2d 270 (3d Dep't 2006) ................................................................................... 5

*Bullmore v. Ernst & Young Cayman Islands*,
   846 N.Y.S.2d 145 (1st Dep't 2007) ............................................................................... 5, 7

*Champion Home Builders Co. v. ADT Sec. Servs., Inc.*,
   179 F. Supp. 2d 16 (N.D.N.Y. 2001) ............................................................................... 9

*CMMF, LLC v. J.P. Morgan Inv. Mgmt. Inc.*,
   No. 601924/09, at 6 (Sup. Ct. N.Y. County Dec. 10, 2009), *aff'd*, 2010
   N.Y. Slip Op. 08628, 2010 WL 4721383 (1st Dep't Nov. 23, 2010) ..................... *passim*

*Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*,
   No. 1:06-CV-871 (FJS) (RFT), 2007 WL 951565 (N.D.N.Y. Mar. 27,
   2007) ................................................................................................................................. 6

*DeLeonardis v. Berg*,
   No. 97 CV 1655 (NG), 1998 WL 760338 (E.D.N.Y. Sept. 15, 1998) ............................. 2

*Dimsey v. Bank of New York*,
   No. 600391/2006, 2006 WL 3740349 (N.Y. Sup. Ct. Aug. 24, 2006) ............................. 6

*Fanta v. Muriel Siebert & Co., Inc.*,
   No. 114837/06, 2008 WL 3521334 (N.Y. Sup. Ct. Jul. 11, 2008) ................................... 5

*Foster v. Kovner*,
   840 N.Y.S.2d 328 (1st Dep't 2007) ................................................................................... 7

Page(s)

*Gross* v. *Sweet*,
49 N.Y.2d 102 (1979) .............................................................................................. 10

*JPMorgan Chase Bank, N.A.* v. *IDW Group, LLC*,
No. 08 Civ. 9116 (PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ........................ 8

*Kaminsky* v. *FSP Inc.*,
773 N.Y.S.2d 292 (1st Dep't 2004) .......................................................................... 6

*Lucente* v. *International Business Machines Corp.*,
310 F.3d 243 (2d Cir. 2002) ................................................................................... 10

*Malik* v. *Toss 29, Inc.*,
N. SP 135/07, 2007 WL 926297 (N.Y. Dist. Ct. Mar. 29, 2007) .............................. 10

*Mandelblatt* v. *Devon Stores, Inc.*,
521 N.Y.S.2d 672 (1st Dep't 1987) ........................................................................... 5

*Piercy* v. *Citibank N.A.*,
424 N.Y.S.2d 76 (N.Y. Sup. Ct. 1978), *aff'd*, 48 N.Y.2d 900 (N.Y. 1979) .................. 9

*Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.*,
No. 07 Civ. 376 (JMB), 2008 WL 2275902 (S.D.N.Y. June 3, 2008) .................... 5, 9

*Scalp & Blade* v. *Advest*,
765 N.Y.S.2d 92 (4th Dep't 2003) ............................................................................. 2

*St. John's Univ.* v. *Bolton*,
No. 08-CV-5039 (NGG)(JMA), --- F. Supp. 2d ---, 2010 WL 5093347
(E.D.N.Y. Dec. 10, 2010) .......................................................................................... 8

*Trumball Invs., LTD* v. *Wachovia Bank*,
No. 1:05cv5 (GBL), 2005 WL 6148880 (E.D. Va. Apr. 15, 2005) ............................ 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 .......................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 10

## **Preliminary Statement**

Plaintiff's opposition to defendants' motion makes significant express or tacit concessions:

- Plaintiff does not dispute that defendants' purchases of the three types of securities at issue here were within the scope of the Guidelines negotiated by the parties and, thus, were expressly authorized (Opp. Br. at 22);

- Plaintiff does not dispute that the underlying agreements between the parties—the Mandate and Guidelines—do not provide for any limitation on the maturity of the securities purchased and instead state that defendants "shall be responsible for selecting the maturities" of securities purchased for the account (*id.* at 20);

- Plaintiff does not dispute that it received monthly account statements that accurately disclosed each security in the portfolio and its maturity (*id.* at 11-12); and

- Plaintiff does not dispute that the agreement between the parties provides that defendants' liability is limited to defendants' "gross negligence or willful misconduct" (*id.* at 19).

## **Argument**

### **I.**

### **PLAINTIFF CANNOT SUSTAIN ITS CLAIM FOR BREACH OF CONTRACT**

As plaintiff correctly recognizes, the *CMMF* and *Assured* courts only "allowed plaintiffs' breach of contract claims to go forward to the extent those claims were based on a breach of a specific contractual provision." (Opp. Br. at 24.) Here, plaintiff claims no such specific breach. Nor does plaintiff claim that any of the detailed, quantitative investment criteria of the Mandate and Guidelines were ever violated. Instead, plaintiff sets forth sweeping allegations that defendants breached the Mandate by investing the account in unsuitable and risky securities—the very type of allegations that *Assured* and *CMMF* held were insufficient to state a claim.

First, plaintiff argues that the complaint sufficiently alleges a breach of contract because defendants allegedly failed to follow the account's investment strategy. (*Id.* at 18-19.)

In support, plaintiff cites the Mandate's objective of "[p]rovid[ing] a high level of current income consistent with the preservation of principal," the account's conservative risk profile, and defendants' alleged failure to select the "most attractive securities." (*Id.* at 19.) Yet, the failure to meet an investment objective has repeatedly been held insufficient to form the basis of a breach of contract claim (*see, e.g.*, Defs. Br. at 7-11), and labeling this as a "strategy" rather than as an "objective" does not save plaintiff's claim.[1]

Second, plaintiff's argument that defendants breached the contract by investing the account in risky securities and by failing to "control risk" has also been repeatedly held insufficient to state a claim in cases involving similar investment agreements.[2] *See CMMF, LLC v. J.P. Morgan Inv. Mgmt. Inc.*, No. 601924/09, at 6 (Sup. Ct. N.Y. County Dec. 10, 2009) ("plaintiff's position [] that defendants had too much appetite for risk . . . fails to state a cause of action for breach of the IMA"), *aff'd*, 2010 N.Y. Slip Op. 08628, 2010 WL 4721383, at *1 (1st Dep't Nov. 23, 2010); *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 2010 N.Y. Slip Op. 08644, 2010 WL 4721590 at *9 (1st Dep't Nov. 23, 2010).

Third, plaintiff argues that the complaint sufficiently alleges a breach of contract because defendants allegedly breached a purported "obligation" by failing to conduct "inten[se]

---

[1] The cases relied on by plaintiff are inapposite and do not support plaintiff's contention that merely alleging that an account was not invested "conservatively" is sufficient to state a breach of contract claim. *See Scalp & Blade v. Advest*, 765 N.Y.S.2d 92, 94 (4th Dep't 2003) (claim sustained based on allegations that advisor "made numerous and frequent short-term trades," "failed to file paperwork properly earmarking the fund as a 'discretionary account,' leading to a failure to subject the fund to the close scrutiny typically given to such accounts" and provided reports "concealing both the level of his trading activity and which particular securities he had purchased or sold"); *DeLeonardis v. Berg*, No. 97 CV 1655 (NG), 1998 WL 760338, at *4 (E.D.N.Y. Sept. 15, 1998) (finding fraud—not contract—claim sufficiently alleged based on allegations that the advisor "received 'hidden commissions, profits and/or other benefits' for sales in the securities at issue" and that the broker's affiliations "creat[ed] a 'conflict of interest' with respect to his duties to the plaintiffs as their investment advisor").

[2] In support of its allegation that certain securities were "subject to extraordinary risk," plaintiff relies on prospectuses that disclose the risks associated with investing in particular securities based on their relationship to the residential mortgage market. Yet plaintiff does not dispute that investments in securities backed by mortgages were expressly authorized by the investment parameters (Guidelines at 2; Defs. Br. at 4, 7-9), nor does plaintiff dispute that it received accurate reports that listed all of the securities held in the account and specifically noted the security type (*e.g.*, ABS, CMO, or Corporate). (Defs. Br. at 4.)

top-down and bottom-up analysis." (Opp. Br. at 20.) As plaintiff recognizes, however, defendants' description of this analysis was a statement of "investment philosophy" made in a letter predating the contract from defendant Todd Brown that was sent as an "initial pitch to [plaintiff]." (Compl. ¶ 24; *see also* 11/7/08 Rosen Decl. Ex. A, at 1.)[3] This statement is not an enforceable contractual obligation because the parties' later-executed agreement contains a merger clause specifically providing that the Mandate and Guidelines "supersede[] any prior oral or written agreements relating to the Account[]." (11/7/08 Rosen Decl. Ex. E, at 6.)

Fourth, plaintiff argues that defendants breached the contract by investing in securities with long-term maturity dates. Yet there are no maturity date restrictions in the contract. The Guidelines state that "[t]he ***Investment Manager shall be responsible for selecting the maturities*** of individual fixed-income securities within the portfolio." (*See* 11/7/08 Rosen Decl. Ex. B, last page (emphasis added).) Even in the Mandate's detailed quantitative requirements set forth in "INVESTMENT RESTRICTIONS & INSTRUCTIONS," there is no reference to maturities.[4] (*See* 11/7/08 Rosen Decl. Ex. B, third page.) In the absence of any contractual provision, plaintiff is forced again to rely exclusively on the same letter from Todd Brown that predates the contract, in which he describes a model portfolio as one where at least some unidentified portion of the "remaining funds"—constituting typically less than 50% of the portfolio—are invested in "securities maturing modestly outside of the money market fund

---

[3] Far from creating an enforceable contract, the first sentence of the letter on which plaintiff relies makes clear that it is merely an early marketing communication. The letter opens: "I am writing to you as a prelude to what I sincerely hope will be a follow-up conversation at some point in the near future." (11/7/08 Rosen Decl. Ex. A, at 1.)

[4] Nonetheless, plaintiff's monthly account statements listed the securities within the account *in order of maturity date*, with the maturity date listed under the name of each individual security. (*See, e.g.*, 11/7/08 Rosen Decl. Exs. F-H.) Although plaintiff argues that defendants' alleged purchase of securities with long maturity dates is comparable "misconduct" to that which formed the basis of the SEC's recent action against Charles Schwab (Opp. Br. at 20), defendants' conduct is not analogous. Charles Schwab is alleged to have misrepresented the maturity dates of securities in materials provided to the SEC and its shareholders, whereas plaintiff does not contend that the account statements provided inaccurate information.

universe (usually between 13 and 24 months)."[5] (11/7/08 Rosen Decl. Ex. A, at 3.) As with the "investment philosophy" from the letter, the statement concerning maturities is barred by the merger clause from constituting part of the parties' agreement.

Finally, plaintiff contends that its breach of contract claim cannot be dismissed because "it is possible that JPM violated the concentration limits" and "JPM . . . has not submitted evidence that shows it was compliant [with the sector limitations]." (Opp. Br. at 22.) However, nowhere in plaintiff's 49-page complaint does plaintiff allege there was a violation of the sector limitations, and thus this contention cannot form the basis of a breach of contract claim. To the contrary, plaintiff concedes that "there is no evidence" that defendants violated the Guidelines' sector limitations. (Opp. Br. at 22.)

## II.

## PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE

Plaintiff fails to allege any breach of duty that is distinct from the obligations under the Mandate and the Guidelines. The duplicativeness doctrine does not permit a plaintiff to pursue tort claims based on conduct governed by the parties' contract. Indeed, plaintiff's exact argument has already been considered—and rejected—by the First Department in the *CMMF* litigation. Accordingly, plaintiff's claims of breach of fiduciary duty, negligence, and gross negligence should be dismissed.

### A. Independent Duties Do Not Insulate Plaintiff From the Prohibition on Pleading Contract Claims as Torts

Plaintiff contends that its tort claims are not duplicative because "a duty of care exists outside the contract." (Opp. Br. at 7.) Even if plaintiff is owed extracontractual duties,

---

[5] This letter does not state that all securities in this particular account will be invested in the manner described therein, nor does the letter constitute the parties' agreement. (*See* Compl. ¶¶ 22, 26, 33 (describing the letter as a "representation" made as part of the "discussions" prior to executing the Mandate and Guidelines).)

-4-

those duties cannot shield tort claims from dismissal if those claims are based on the same conduct governed by the parties' contract. Were plaintiff's theory the law (and it is not), negotiated investment guidelines would lose their meaning; investors could simply turn to tort law to recover for losses on securities that comported with the parties' agreed-upon quantitative and qualitative investment limitations. The duplicativeness doctrine acts to prevent just such a result. *See Brooks* v. *Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272-73 (3d Dep't 2006) (dismissing investor's fiduciary duty claim as duplicative where the allegations were "expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship").

In the instances where courts allow tort claims based on independent duties to proceed, those claims concern *extracontractual conduct*—typically, a breach of the duty of loyalty or fraud. The court in *Robin Bay Assocs., LLC* v. *Merrill Lynch & Co.* recognized this distinction:

> [Plaintiff's] allegations for breach of fiduciary duty—failure to qualify potential sources of financing, failure to find alternative sources of financing . . . and failure to ensure delivery of promised funds—are identical to those that form the basis of [plaintiff's] breach of contract claim. . . . The supposed breach of fiduciary duty in this case involves a failure to perform duties that are contractual in nature, ***as compared to affirmative acts of betrayal or fraud that violate standards of conduct beyond those bargained for in the contract.***

No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *3-4 (S.D.N.Y. June 3, 2008) (emphasis added). The cases cited by plaintiff are consistent with this rule.[6]

---

[6] *See AG Capital Funding Partners, L.P.* v. *State Street Bank and Trust Co.*, 896 N.E.2d 61, 66, 68 (N.Y. 2008) (reinstating negligence claim as not duplicative where that claim was based upon an alleged "extracontractual duty" to deliver a registration statement to plaintiffs); *Bullmore* v. *Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 147-48 (1st Dep't 2007) (declining to dismiss tort claims as duplicative where they were predicated on allegations that defendants fraudulently "conceal[ed] the extent of the [investment fund's] losses"); *Bender Ins. Agency, Inc.* v. *Treiber Ins. Agency, Inc.*, 729 N.Y.S.2d 142, 145 (2d Dep't 2001) (holding that plaintiff's claims for breach of contract and breach of the duty of loyalty were not duplicative); *Mandelblatt*

Plaintiff's tort claims must be dismissed because plaintiff does not—and cannot—allege any breach of duty that falls outside of the contractual requirements governing defendants' investment decisions.[7] Instead, plaintiff alleges that defendants breached the contract "by investing the Account in a manner that clearly contradicted the investment objectives and wholly disregarded the risk profile," and restates the same facts in support of its tort claims. (Compl. ¶¶ 126, 131 (alleging that defendants "invest[ed] heavily in securities which were contrary to Plaintiff's stated objectives").)[8]

The plaintiff in *CMMF* also argued that its tort claims could not be duplicative where it was owed independent duties by J.P. Morgan Investment Management ("JPMIM").[9] Both Justice Schweitzer and the First Department rejected that argument where, as here, CMMF

---

v. *Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (holding that plaintiff adequately stated an independent claim for the breach of the duty of loyalty where independent consultant disparaged his employer's business); *Fanta* v. *Muriel Siebert & Co., Inc.*, No. 114837/06, 2008 WL 3521334, at *3 n.1 (N.Y. Sup. Ct. Jul. 11, 2008) (declining to dismiss negligence claim as duplicative "since [defendant] has not sought such relief"); *Dimsey* v. *Bank of New York*, No. 600391/2006, 2006 WL 3740349, at *3 (N.Y. Sup. Ct. Aug. 24, 2006) (allowing fiduciary duty claim premised on a specific "failure to execute a customer's instructions" to proceed).

[7] See *Kaminsky* v. *FSP Inc.*, 773 N.Y.S.2d 292, 293 (1st Dep't 2004) (affirming dismissal of fiduciary duty claim that "fail[ed] to allege conduct by defendants in breach of a duty other than, and independent of, that contractually established between the parties") (citation omitted). In an effort to evade this rule, plaintiff seeks to create new duties under New York law by citing a decision regarding the churning of an investor's brokerage account. (Opp. Br. at 9 (citing *Leib* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951 (E.D. Mich. 1978), *aff'd* 647 F.2d 165 (6th Cir. 1981).) Plaintiff offers no authority suggesting that the duties applicable to Michigan brokers govern the conduct of investment managers under New York law. In any event, plaintiff fails to point to any purported separate duties owed by defendants to NM Homes that "spring from circumstances ***extraneous to, and not constituting elements of, the contract*** . . . ." *Consol. Risk Servs., Inc.* v. *Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871 (FJS) (RFT), 2007 WL 951565, at *3 (N.D.N.Y. Mar. 27, 2007) (citation omitted) (emphasis added). The duties cited by plaintiff—including "manag[ing] the account in a manner directly comporting with the needs and objectives of the customer" (Opp. Br. at 9)—clearly "constitute elements of" the Mandate and the Guidelines.

[8] Revealingly, plaintiff identified only two allegations underlying its tort claims that "do[] not overlap with conduct supporting NMH's contract claim." (Opp. Br. at 11-12.) The allegations that "JPM[] purchase[d] . . . long-term maturities for the Account" and "refused to provide . . . security-specific information" (*id.*) concern conduct that is expressly governed by the parties' contract and thus do not save plaintiff's claims. The Mandate and Guidelines set forth the requirements for securities suitable for the account, and provide that defendants "shall be responsible for selecting the maturities" of the securities. (*See* 11/7/08 Rosen Decl. Ex. B, last page.) Likewise, the General Terms for Accounts and Services provide that defendants are obligated to "provide [NMH] with periodic statements detailing the activity . . . in [the] Account[]." (11/07/08 Rosen Decl. Ex. E, at 3.)

[9] In its appellate brief, CMMF devoted five pages to the unsuccessful argument that "because JPMorgan owed CMMF extra-contractual duties, CMMF's breach of fiduciary duty and negligence causes of action should be sustained." Pl. Appeal Br. 21-25, *CMMF*, No. 601924/09 (1st Dep't 2010).

sought to recover in tort for allegedly improper management of a discretionary investment account governed by investment guidelines that set forth nearly identical requirements for the securities suitable for the account.[10] *CMMF*, 2010 WL 4721383, at *2. In his decision (subsequently affirmed in full by the First Department), Justice Schweitzer explicitly rejected the line of cases on which plaintiff now relies: "It is a well-established general rule that a cause of action for negligence cannot be stated by virtue of a breach of contractual obligations. To the extent *Bullmore* deviates from this rule, it is fact specific, involving allegations of fraud in circumstances which led to an investigation by the Securities and Exchange Commission." *CMMF*, No. 601924/09, at 11 (citations omitted).[11]

### B. Plaintiff's Arguments that the Dismissal of Its Contract Claim or the Presence of an Individual Defendant Can Rescue Its Duplicative Tort Claims from Dismissal Are Unavailing

Plaintiff contends that "tort claims can only be dismissed as duplicative when there is a viable contract claim." (Opp. Br. at 13.) This is incorrect. *See Foster v. Kovner*, 840 N.Y.S.2d 328, 334 (1st Dep't 2007) ("[A] court will dismiss as duplicative a cause of action for breach of fiduciary duty based entirely on allegations supporting a breach of contract claim, even

---

[10] Plaintiff contends—without analysis—that the "*CMMF* plaintiff's tort claims, unlike NMH's claims here, were predicated on conduct that was arguably addressed by the contract." (Opp. Br. at 11.) As the *CMMF* court wrote, CMMF's tort claims alleged, among other things, that JPMIM (i) "saturat[ed] the portfolio with risky residential real estate securities;" (ii) "fail[ed] to sell off risky real estate assets;" and (iii) "purchas[ed] additional amounts of these securities as the default rates on their underlying collateral began to rise." *CMMF*, No. 601924/09, at 10-11. This allegedly excessive risk-taking is *exactly* the same conduct on which NM Homes bases its tort claims. (*See* Opp. Br. at 4-5 (alleging that (i) "JPM purchased securities for NMH's account that were particularly volatile;" (ii) "JPM purchased securities for NMH's Account that were directly and/or indirectly tied to the subprime mortgage market [after reports of stress in the real estate market];" and (iii) "JPM compounded the problem by failing to sell those securities, even as the market bottomed out").)

[11] Plaintiff's interpretation of the *Assured* decision (Opp. Br. at 8 n.7) does not save its claims. Given that the same panel of the First Department affirmed the dismissal of CMMF's tort claims as duplicative on the very same day, it appears clear that Assured's tort claims survived solely because the Court also held that the only contract claim in that case was based on the theory that JPMIM breached the provision of the contract requiring that the investments be in compliance with Chapter 13 of the Delaware Code—a claim that has not been made and could not be made either in *CMMF* or here. Accordingly, the tort claims in *Assured* do not overlap with the contract claim asserted by that plaintiff. Here, by contrast, as in *CMMF*, the allegations underlying plaintiff's tort claims merely relabel as torts conduct that plaintiff argues constituted a breach of contract as well. Accordingly, plaintiff's tort claims should be dismissed as duplicative.

if that claim is unenforceable . . . ."). Plaintiff purports to distinguish cases where the breach of contract claim is dismissed along with duplicative tort claims because the tort claim dismissed as duplicative was not one for fiduciary duty against an investment advisor. (Opp. Br. at 13-14.) Plaintiff misses the fundamental point of these decisions: duplicative tort claims should be dismissed regardless of whether the breach of contract claim also fails. (*See* Defs. Br. at 16-17.) Plaintiff's position is flatly inconsistent with the result in *CMMF*, where the First Department affirmed the dismissal of both CMMF's contract claim to the extent it alleged that defendants selected inappropriate securities and failed to meet an investment objective as well as CMMF's tort claims that alleged the same conduct. *See CMMF*, 2010 WL 4721383, at *1-2.

Nor does plaintiff's argument that naming an individual employee as a defendant saves its tort claims fare any better. (*See* Defs. Br. at 12-13.) As defendants pointed out in their opening brief, plaintiff's theory would render the duplicativeness doctrine a nullity by allowing litigants to simply plead tort claims against an individual employee through which the contracting corporation acted. Revealingly, nowhere in its brief does plaintiff respond to this argument. Moreover, plaintiff's argument that the tort claims survive because the individual was not a party to the contract was raised before the trial court and the First Department in *CMMF* and rejected by both courts.[12]

### C.  Plaintiff's Duplicative Tort Claims Are Not Alternative Theories of Liability and Are Barred as a Matter of Law

Plaintiff's position that its tort claims should proceed as alternative theories is also untenable. (Opp. Br. at 14.) Plaintiff's tort-based claims are not "alternative" theories of

---

[12] Like NM Homes' allegations against the relationship manager for its account, CMMF brought several tort claims against the JPMIM employee assigned to manage its account. On appeal, CMMF argued that the lower court erred in rejecting the tort claims against the JPMIM employee as duplicative because "he was not a party to the [investment management agreement]" and its tort claims "are thus not duplicative of any claim of breach of contract." Pl. Appeal Br. 25-26, *CMMF*, No. 601924/09 (1st Dep't 2010). This argument was rejected by the First Department. *CMMF*, 2010 WL 4721383, at *2.

liability, but rather, duplicative. The cases cited by plaintiff stand for the general proposition that a plaintiff may plead in the alternative under Fed. R. Civ. P. 8, but do not hold that a plaintiff may plead duplicative *tort* claims as an alternative to a contract cause of action.[13] Where, as here, plaintiff's tort claims rest on conduct that is governed by its contract, plaintiff is barred as a matter of law from recovering in tort for the selection and purchase of securities for its account. *See, e.g., Robin Bay Assocs.*, 2008 WL 2275902, at *3 (granting motion to dismiss breach of fiduciary duty claim).

## III.

## PLAINTIFF'S NEGLIGENCE CLAIM IS INDEPENDENTLY BARRED BY THE LIMIT ON LIABILITY IN THE PARTIES' CONTRACT

Plaintiff does not dispute that the agreement between the parties provides that defendants' liability is limited to defendants' "gross negligence or willful misconduct." (*See* 11/7/08 Rosen Decl. Ex. E, at 4; Defs. Br. at 19.) Plaintiff's primary argument is that the clause should not be enforced because defendants were managing NM Homes' account "on a discretionary basis," and thus enforcement of the clause raises "public policy concerns."[14] (Opp. Br. at 16.) Yet, courts have in fact considered exculpatory clauses contained in discretionary

---

[13] In *St. John's Univ. v. Bolton*, for instance, the court allowed the plaintiff to plead an unjust enrichment claim—a *contract-based* claim "viable only in the absence of an enforceable agreement"—as an alternative theory of recovery. No. 08-CV-5039 (NGG)(JMA), --- F. Supp. 2d ---, 2010 WL 5093347, at *30-31 (E.D.N.Y. Dec. 10, 2010). Contrary to plaintiff's suggestion, nowhere in the *JPMorgan Chase Bank, N.A. v. IDW Group, LLC* decision did the court reference the argument that duplicative tort claims can be pled as an alternative to a breach of contract claim. *See* No. 08 Civ. 9116 (PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009). Instead, that decision held that JPMorgan's claim was not duplicative where it alleged that the defendant placed its own interests above those of JPMorgan in contravention of its fiduciary obligations. *See id.* at *12. Indeed, the court expressly distinguished JPMorgan's fiduciary duty claim in that case from duplicative fiduciary duty claims that are "based upon factual circumstances identical to the underlying breach of contract claims." *Id.*

[14] Plaintiff's other (unsupported) argument—that "issues relating to the exculpatory clause are not appropriate for determination on [a] motion to dismiss"—is meritless. (Opp. Br. at 17.) Courts regularly rule on the applicability of such clauses at the motion to dismiss stage. *See, e.g., Piercy v. Citibank N.A.*, 424 N.Y.S.2d 76 (N.Y. Sup. Ct. 1978), *aff'd*, 48 N.Y.2d 900 (N.Y. 1979); *Trumball Invs., LTD v. Wachovia Bank*, No. 1:05cv5 (GBL), 2005 WL 6148880, at *4 (E.D. Va. Apr. 15, 2005) (applying New York law); *Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16, 23-24 (N.D.N.Y. 2001).

management agreements limiting liability to gross negligence, like the one at issue here, and have consistently found them to be enforceable. (*See* Defs. Br. at 19-21.)

The two cases on which plaintiff relies to support the proposition that an exculpatory provision will not be enforced when it violates public policy are inapposite because both involve **blanket** waivers of liability for **personal injuries**.[15] (*See* Opp. Br. at 16.) Accordingly, NM Homes may not assert a negligence claim in contravention of its contract.[16]

## Conclusion

For the reasons set forth above, defendants respectfully request that the Court dismiss the remaining Counts of the complaint, with prejudice. Aside from plaintiff's fraud claims (which this Court has already granted permission to plaintiff to replead), defendants oppose plaintiff's request to replead any other claims. As plaintiff has acknowledged, "there is no evidence" that defendants violated the specific diversification limits of the Guidelines. (Opp. Br. at 22.) As such, any amendment would be futile. *See Lucente* v. *International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (citation omitted).

---

[15] *See Ash* v. *New York Univ. Dental Ctr.*, 564 N.Y.S.2d 308, 310 (1st Dep't 1990) (holding that release of all liability in specific context of medical or dental malpractice violates public policy); *Gross* v. *Sweet*, 49 N.Y.2d 102, 105 (1979) (involving waiver of personal liability involving serious personal injuries due to the negligence during a parachuting attempt). Notably, the court in *Gross* distinguished the release of personal injury liability from exculpatory clauses which are "negotiated at arm's length between sophisticated business entities[,] and which can be viewed as merely allocating the risk . . . ." *Id.* at 108 (internal quotations and citations omitted).

[16] Other decisions cited by plaintiff are equally inapplicable. *See, e.g., In re Allegheny Int'l, Inc.*, 100 B.R. 244, 247 (Bankr. W.D. Pa. 1989) (holding that a "court can alter the terms and conditions of [contracts with bankruptcy professionals]" due to "broad equitable powers under [] Bankruptcy Code"); *Malik* v. *Toss 29, Inc.*, N. SP 135/07, 2007 WL 926297, at *4 (N.Y. Dist. Ct. Mar. 29, 2007) (holding that it would be inequitable to allow a landlord to enforce a lease provision permitting immediate termination of a tenant's lease upon filing suit against landlord who materially breached his duty to repair a sewer line).

Dated: New York, New York  
February 11, 2011

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____/s/ Richard A. Rosen_____  
Richard A. Rosen (rrosen@paulweiss.com)  
John F. Baughman (jbaughman@paulweiss.com)  
Farrah R. Berse (fberse@paulweiss.com)  
Jennifer K. Vakiener (jvakiener@paulweiss.com)

1285 Avenue of the Americas  
New York, New York  10019  
Tel.:  (212) 373-3000  
Fax:  (212) 757-3990

*Attorneys for defendants JP Morgan Chase Bank, N.A. and Todd Brown*